## O'RORKE *v.* UNION PAC. RY. CO.

*(Circuit Court, D. Colorado. 1884.)*

MASTER AND SERVANT—INJURY TO RAILROAD EMPLOYE SENT UNDER CAR—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—WAIVER.

Where a railroad company calls upon an employe to go under a car on a side track, on which other cars are liable to be moved or switched, to repair such car, it is its duty to provide him with a red flag as a danger signal; but if the employe is an old railroad man, and fully aware of the danger, and has continued for months to perform such duties, and neglected to demand and procure a flag, he may be considered as having waived his right to recover for any injury received in consequence of such neglect.

Motion for New Trial.
*Markham, Patterson & Thomas*, for plaintiff.
*Teller & Orahood*, for defendant.

BREWER, J. In No. 1,176, *O'Rorke* v. *Union Pacific Ry. Co.*, a motion was made for a new trial. It was an action for personal damages, and a verdict was found for the plaintiff. The substantial facts are these: This plaintiff was a car repairer, engaged in repairing cars along the line of the defendant's road. On the day of the accident he went to the station at Malta, I believe, and found there three cars standing on a side track, with a freight train on the main line. The conductor of the freight train told him that the rear car of the three side-tracked cars needed repairing, and that he should wait there about 20 minutes, which would be time enough to do the work.

He went under the car to repair it, and while there parties in charge of the freight train switched a car onto the side track, which started the other cars on the track, and they pushed the car under which he was at work, moving it some few feet and injuring him. He had no red flag out with which to signal to the engineer, and no assistant to notify parties moving the train that he was at work under the car; and the engineer moving the train did not know there was any one under the car. He had no reason to suppose that any one was under it, and switched off his freight car onto the side track without any knowledge or reason to believe there was any danger in so doing.

Indeed, so far as the action of the engineer is concerned, no negligence can be affirmed in his conduct. The complaint is that the railroad company was negligent in not furnishing to one engaged in that business, and necessarily compelled to go under cars and liable to be there injured, a red flag which he might station out as a signal, or furnish him an assistant to give notice of his position; and that the railroad company was negligent in not so doing I have no question. Whenever they call upon an employe to go into such a position as that, I think it is their duty to provide him with the ordinary means of protection, which, we are informed by the testimony, is a red flag. It cannot be expected that an engineer in switching cars can send a man forward to see whether or not some one is under any car; and the red flag, being the ordinary signal of danger, should have been furnished to this man. But the troublesome question lies back of that. This plaintiff was an old railroad man, fully aware of the dangers of such work as he was then engaged upon. He had been employed on this road in such work for seven or eight months, and was in the habit of going under cars under just such circumstances. He had no flag, and had asked for none. Now, the railroad company insists that he waives his right to recover for any injury received, in consequence of that fact. This doctrine of waiver, upon which the company relies, is a doctrine which has been developed within the last few years. It has been carried by some courts to a dangerous extent—one which I think cannot be finally sustained.

It has been said, and I think there is force in it, that there is really no such thing as a separate and distinct defense of waiver, and that what is called waiver is simply one form of "contributory negligence;" that the difference between waiver and contributory negligence is the difference between passive and active negligence, and that what is meant by waiver is passive negligence, in omitting to do a thing which the employe ought to have done; and, in this case, it would be said that the plaintiff omitted to call for a flag,—omitted to take precautions which he ought to have taken,—and that is nothing more or less than passive negligence. As I said, this doctrine of waiver has been carried by some courts to a great extent. They have affirmed that an employe, whenever he finds suitable precautions have not been taken for his safety, ought to stop at once, and, if he con-

tinues on, he assumes all the risks. I do not think that can be held to be law.

A case was presented to me in Des Moines last spring, where that claim was very urgently pressed by the railroad company. In that case, a common laborer, who had been employed for some time as a section hand, was, on this particular day, employed to load railroad iron. It appeared that the railroad company had substituted steel rails for iron rails, and simply thrown the iron rails to one side, and then sent a train along to pick them up. The train was constantly in motion at first, at a low rate of speed. As two rival gangs, one on each side of the train, worked together, and became more interested in their work, and worked more quickly, the train moved more rapidly. Finally, a flat car having been loaded too high, and the sides having been insufficiently protected, a rail, which was thrown on, fell off, and this laborer was caught and hurt, and the company tried to insist upon the doctrine of waiver,—that this man had been working all the day, the accident happening about 2 or 3 o'clock in the afternoon; that he was willing to do the work; and that he waived his right to compensation in view of that fact. He saw the danger he was in, and, seeing it, continued to work. I held that the company was liable. I do not think that the urgency can be forced upon an employe so quickly as that for deciding; that he cannot be called upon at the instant to stop work if he sees there is danger. Suppose an engineer, running a train between the point of departure and the point of terminus, finds that his engine is out of order, can he stop right there and say he will stop until the injury is mended? It would not be safe to do this. He must carry the defective engine to its point of destination. No other rule would be safe. And so, generally, a man cannot be called upon at the moment to say, "There is a defect, or there is danger, and I will stop." He has a right to wait a reasonable time; to consider the circumstances of the case, and to give notice to his employers that he is in danger; time enough to see whether the employer means to have the defect remedied; time enough to see the general way in which he conducts his business; and if he finds that his employer intends to use machinery with defects, or to conduct his work in a dangerous manner; finds that is to be his habit; finds that, after he has been notified, he still intends to conduct his business in that way, and then goes on and continues in the work,—it is fair to assume that he takes the risks.

Of course, there can be no question where it is expressly agreed upon. Suppose, for instance, that I own a mill; suppose the machinery in it is clearly defective, and I say to an employe: "I am running a mill in which there is defective machinery;"—and I point out to him the defect;—"are you willing to work here and take the risks?" If he says he is, he cannot afterwards recover if he is injured. And so, in order that there should be an implied agreement, the facts should exist for so long a time that the employe has opportunity to see that

his employer means to let the machine remain in that condition, and carry on his business in that way as a general rule; and if he then continues at work, he may be presumed to consider the compensation sufficient to justify him in taking the risk. In this respect it appears that this plaintiff had been, for seven or eight months, in the employ of the company along this line of road; that he had done this work day after day without a flag, knowing its necessity, making no complaint, asking for no change; and it seems to me that, after we consider this and all the circumstances of the case, it must be said that, negligent although the company was, the man assumed the risks of the danger, knowing what it was, and cannot now hold the company responsible.

I think the motion for a new trial must be sustained.