(January 16, 1893.)

## HARVEY v. ALTURAS GOLD MINING CO., LIMITED.

### [31 Pac. 819.]

MASTER AND SERVANT—PRESUMPTION AS TO SERVANT'S SKILL AND EXPERIENCE.—The general rule as between master and servant is, a servant undertakes, when he engages in a certain kind of work, that he has the necessary skill and experience to perform the work he undertakes; that he understands the management of the machinery necessary to perform this work, the machinery generally used to perform such work, or the particular machinery which he·sees is in use in this particular instance.

CONTRIBUTORY NEGLIGENCE OF SERVANT.—That he will exercise the necessary care used by a man of prudence in doing such work as he is obliged to perform for his employer; if he fails in either of these, and is injured in consequence thereof, he is guilty of contributory negligence and cannot recover.

DUTY OF EMPLOYER—TO FURNISH SUITABLE MACHINERY AND TOOLS—TO KEEP SAME IN GOOD CONDITION.— On the other hand, his employer engages to furnish machinery and tools ordinarily used in the performance of such work; that he will keep such machinery and tools in a reasonably safe and good condition while such work is being performed. If the employer fails in either of these particulars and the servant is injured thereby, the servant, having filled all the conditions required on his part, can recover a reasonable sum for damages by him suffered.

SERVANT TO NOTIFY EMPLOYER IF TOOLS ARE DEFECTIVE.—If the servant, after engaging in the work, finds the tools defective and not in good condition, and that some of them are dangerous, then he is charged with another duty—that of informing his employer, or his agent who is directing the work, of such defect.

EMPLOYER REFUSING TO PUT MACHINERY AND TOOLS IN GOOD CONDITION—REASONABLE TIME.—If the employer, after being informed, refuses to put the machinery or tools in good condition, the servant should decline to do the work with such machinery; if he does not do so, and is injured thereby, he cannot recover. And if, when so informed, the employer promises to remedy the defect within a reasonable time, the servant may continue in the work, and if he is injured within such reasonable time, without any fault on his part, he can recover for such injury.

WHETHER INJURY OCCURRED WITHIN REASONABLE TIME QUESTION FOR JURY.—The question as to whether the injury occurred within a reasonable time after the promise made to repair the defective machinery is a question for the jury, with proper instructions from the court.

EMPLOYEE MAY RECOVER DAMAGES.—If the promises are such that a prudent man might reasonably rely upon them with confidence that they would be fulfilled, he may continue in the work, and if he is injured thereby, he may recover damages from his employer. (Syllabus by the court.)

APPEAL from District Court, Elmore County.

This is an action at law brought by the plaintiff to recover damages for certain injuries suffered by him in the employ of the appellant as a miner and pumpman in the Ida Elmore mine at Rocky Bar, in what is now Elmore county, in this state. The plaintiff alleges that the defendant is a corporation; that heretofore, on the eighteenth day of August, 1886, the defendant was operating, working and mining that certain mine in Rocky Bar, Alturas county, Idaho, known as, and called the Ida Elmore mine; that the plaintiff was working at said time in said mine as a pumpman, and had charge of the pump in said mine in the night-time; that as such it was his duty to attend to the running of the pump in said mine, which is of that class called "Cornish" pumps; that said pump in said mine was not in good condition, and when it required repacking or repairing, was dangerous by reason of certain defects in its construction, and of injuries and breakages which it had some time theretofore sustained. That the doorplate of the chamber had been broken, and in replacing the same, instead of using a new one, the said broken piece had been improperly used, and instead of so fixing it that it might be removed when required as the same was devised and intended in the construction of said pump, it had been permanently fastened to the said cylinder by rivets and bolts in such a manner that it could not be removed as intended, thus making it necessary in reaching the valves or any part of the inside of said cylinder, instead of removing said door or plate as intended, to remove the top or head of said cylinder, to do which it was necessary to lift up the top or head of said cylinder, together with the column and pump-rod, suspending the same by use of a yoke devised and in use in said mine for that purpose. That the said Ida Elmore mine had been for a long time prior to the said eighteenth day of August, filled with water, and by reason thereof the different pieces, and particularly the yoke above mentioned, had become slimy and slick

so that it did not hold well, and was unsafe to use for the purpose above set forth. That the defendant had at said mine, on or before the said eighteenth day of August, duplicate doors or plates of the kind above mentioned, fitted to and appropriate to be used on said pump cylinder, but had failed and neglected to replace the said defective and broken door or plate with one of the said duplicate perfect ones mentioned, and willfully and negligently permitted said pump to remain in the defective and dangerous condition before alleged. That before the said eighteenth day of August, plaintiff having discovered the defective and dangerous condition of said pump, reported the same to the foreman of said mine, and told him it was unfit for use and dangerous, and asked permission to properly repair the same and put it in a good condition by replacing said broken door or plate with one of the perfect duplicates aforesaid, to which said foreman refused his assent and directed plaintiff to continue the use of said pump as theretofore, and informed plaintiff that no change would be made until after the first of the following month. Plaintiff protested against the use of the said pump in its defective condition, but was required and compelled, in the regular course of his employment, to use the same, notwithstanding its dangerous condition. That, on the eighteenth day of August, 1886, it became necessary to repair the valves and packing in the said cylinder, and being unable to remove the said doorpiece for that purpose, as hereinbefore described, plaintiff reported to the shift boss in said mine, who requested and directed him, as was his duty, to have some miners, under his direction, hoist the pump column and rod with cylinder head away from and above the cylinder, so that plaintiff could reach the bucket thereof. That thereupon blocks and tackle were attached to the said rod and column and the same were, by the miners at work in said mine, hoisted through the yoke above described and the said yoke clamped together with the bolts and appliances aforesaid as firmly as its condition would permit. The cylinder head and lower end of column and rod were then about two feet above the top of the cylinder, thus leaving the top of the cylinder open when the same was so hoisted and clamped as aforesaid. Plaintiff, who was using the cylinder

at the bottom of the mine, called up to the miners who were at work as aforesaid, a distance of about seventy-five feet above him in the shaft, if everything was ready and made fast and safe, to which they replied that it was. That thereupon plaintiff commenced making the repairs. That, in preparing for said work as aforesaid, and in doing the same, plaintiff took every precaution to protect himself from injury that the condition of said pump and appliances would allow, and neglected no means that were then and there to be had and used to prevent accident and avoid danger. That said cylinder head, column and rod are of great weight; that, while plaintiff was doing the said necessary work in said cylinder, as aforesaid, the said pump column, by reason of the said defective condition of the yoke, slipped through said yoke and fell with great force and violence, with the combined weight of the column, cylinder head and pump rod upon plaintiff's arms, crushing them between the cylinder head and the cylinder, thereby inflicting upon him injuries of dangerous and painful character. That said injuries have completely and permanently disabled him, and incapacitated him from pursuing his occupation above mentioned, or any avocation involving or requiring any physical strength or the use of his arms. That by reason of the injuries aforesaid, he has been rendered, and is now and will be hereafter for the remainder of his life, unable to maintain himself and family by his labor, or any occupation with which he is familiar, and demands damages in the sum of $30,000. The defendant, answering, admitted its corporate character, admitting that at the time alleged it was mining, operating and working the said mine as set forth in the complaint. Admits that the doorplate of the chamber, as described in plaintiff's complaint, had been broken, and for the purpose of preventing leakage in the cylinder the same had been permanently secured and fastened. Avers contributory negligence on the part of the plaintiff, and denies all the other material allegations. Trial was had before the court and a jury, resulting in a verdict and judgment for plaintiff in the sum of $10,000. Defendant moved for a new trial, on the ground that the verdict is against law, and on the ground of errors of law occurring at the trial and excepted to by the defendant. Said mo-

tion was heard upon a statement of the case by the Honorable C. O. Stockslager, judge of the fourth judicial district, and a new trial refused, from which order refusing a new trial said defendant appeals to the supreme court.

Richard Z. Johnson & Sons, for Appellant.

This company might run its mine with a new or an old pump, with a perfect or a broken doorpiece; might run it as the New York Company had run it for years, and as appellant had continued to run it, or might select its own appliances; and an employee of sound and mature mind and memory, forty years of age, of life-long experience as a miner, and in the management of Cornish pumps, who is employed as a pumpman, and bound to know, and who does know and has examined and used the appliances furnished, and who continues in the service for the stipulated reward, cannot recover for any injury resulting from the defects of these appliances. As a matter of law, he assumes the risks of the appliances actually in use as conclusively as though he had entered into an express covenant or agreement to hold his employer harmless. He may be presumed to consider the compensation sufficient to justify him in taking the risk. (*O'Rorke v. Union Pac. Ry. Co.,* 22 Fed. 191; *Foley v. Jersey City Electric Light Co.,* 54 N. J. L. 411, 24 Atl. 488; *Alcorn v. Chicago etc. R. Co.,* 108 Mo. 81, 18 S. W. 191, 192; *Woodley v. Metropolitan Dist. Ry. Co.,* 2 Ex. 384, 21 Moak's Eng. Rep. 511; *Baltimore etc. R. Co. v. State,* 75 Md. 152, 32 Am. St. Rep. 372, 23 Atl. 312; *Hayden v. Smithville Mfg. Co.,* 29 Conn. 558, quoted and approved in *Gibson v. Erie Ry. Co.,* 63 N. Y. 453, 20 Am. Rep. 552; *Sweeney v. Envelope Co.,* 101 N. Y. 524, 54 Am. Rep. 722, 5 N. E. 358.) "The employer is not liable for injuries received by an employee, when he voluntarily assumes the open and apparent risks of defective machinery." (*Plunkett v. Donovan,* 36 N. Y. St. 91, 12 N. Y. Supp. 454, citing the above New York cases; *McGlynn v. Brodie,* 31 Cal. 376, 379-381, citing *Dyner v. Leach,* 40 Eng. L. & Eq. 492; *Kielley v. Belcher etc. Min. Co.,* 3 Saw. 501, 504, 505, Fed. Cas. No. 7761; *Buzzell v. Laconia Mfg. Co.,* 48 Me. 113, 77 Am. Dec. 217, 218, note, pp. 222-224; *Michael v. Stanley,* 75 Md. 464, 23 Atl. 1095; *Steph-*

*enson v. Duncan,* 73 Wis. 404, 9 Am. St. Rep. 806, 41 N. W. 337; *Texas etc. Ry. Co. v. Bradford,* 66 Tex. 732, 59 Am. Rep. 639, 2 S. W. 597, 598.) "A servant cannot continue to use a machine he knows to be dangerous at the risk of his employer." (*Dillon v. Union Pac. Ry. Co.,* 3 Dill. 324, Fed. Cas. No. 3916.) "A servant assumes, not only the risk ordinarily incident to his occupation, but such extraordinary risks as he may knowingly and voluntarily encounter." (*Smith v. Winona etc. Ry. Co.,* 42 Minn. 87, 43 N. W. 969, citing 27 Minn. 112, 140, 367; *Pingree v. Leyland,* 135 Mass. 399-401; *Sullivan v. India Mfg. Co.,* 113 Mass. 398, 399; *Lovejoy v. Boston etc. R. Co.,* 125 Mass. 82, 83, 28 Am. Rep. 206; *Taylor v. Carew Mfg. Co.,* 140 Mass. 150, 3 N. E. 22; *Coombs v. Fitchburg R. Co.,* 156 Mass. 200, 30 N. E. 1141.) This is not a mere question of contributory negligence, but in such case the servant assumes the risk, and thereby waives all right of action against the master for damages in case of injury. (Beach on Contributory Negligence, p. 360, sec. 139; Beach on Contributory Negligence, p. 371, sec. 140; *Green v. Cross,* 79 Tex. 130, 15 S. W. 220; *Smith v. Winona etc. Ry. Co.,* 42 Minn. 87, 43ᵗ N. W. 968, 969; *Boyle v. New York etc. Ry. Co.,* 151 Mass. 102, 23 N. E. 827; *Balle v. Detroit Leather Co.,* 73 Mich. 158, 41 N. W. 218; *Lord v. Pueblo Smelting Co.,* 12 Colo. 390, 21 Pac. 148, 149, 151; *Patnode v. Harter,* 20 Nev. 303, 21 Pac. 680-682; *Williams v. Delaware etc. Ry. Co.,* 116 N. Y. 628, 22 N. E. 1118; *McGlynn v. Brodie,* 31 Cal. 376-383; *Kielley v. Belcher etc. Min. Co.,* 3 Saw. 501, Fed. Cas. No. 7761; *Sweet v. Ohio Coal Co.,* 78 Wis. 127, 47 N. W. 182; *Carbine v. Bennington Ry. Co.,* 61 Vt. 348, 17 Atl. 492; *Way v. Chicago etc. Ry. Co.,* 76 Iowa, 393, 41 N. W. 52; *McCauley v. School District,* 133 Pa. St. 483, 19 Atl. 410; *Williamson v. Newport News Co.,* 34 W. Va. 657, 26 Am. St. Rep. 927, 12 S. E. 824, 827; *Diehl v. Lehigh Iron Co.,* 140 Pa. St. 487, 21 Atl. 430, 431; *Pratt v. Prouty,* 153 Mass. 333, 26 N. E. 1002.) "In an action by an employee to recover damages for an injury received from a machine which the employee had to operate, the employee, to recover, must affirmatively establish: 1. That the machine or appliance was defective; 2. That the master had knowledge or notice, or ought to have known such fact; 3. *That the em-*

*ployee did not know, and had not equal means with the master of knowing such fact."* (Black on Proof and Pleadings in Accident Cases, sec. 21; *Indiana etc. Ry. Co. v. Dailey,* 110 Ind. 75, 10 N. E. 634; *Lake Shore etc. Ry. Co. v. Stupak,* 108 Ind. 1, 8 N. E. 632; *Bogenschutz v. Smith,* 84 Ky. 330, 1 S. W. 579.) An express promise to repair will only protect the servant for a reasonable time required to make the repairs; "and if, with knowledge that such promise has not been performed by the master, after a sufficient time has elapsed for such performance, the servant continues in the service and is injured, he cannot recover." (*Gulf etc. Ry. Co. v. Brentford,* 79 Tex. 619, 23 Am. St. Rep. 377, 15 S. W. 561; *Stephenson v. Duncan,* 73 Wis. 404, 9 Am. St. Rep. 806, 41 N. W. 337.) "In a proper case a servant may rely upon such assurance for a reasonable time for the performance thereof; but if he remains in such service after the expiration of such reasonable time, he is thereby deemed to have waived his objection and assumed the risk." (*Corcoran v. Gas Light Co.,* 81 Wis. 191, 51 N. W. 328, 330.) A mere accident affords no cause for action. The law does not affix any responsibility for injuries purely accidental. (Cooley on Torts, 91; *Mitchell v. Chicago etc. Ry. Co.,* 51 Mich. 236, 47 Am. Rep. 266, 16 N. W. 388; *Toomey v. Eureka Iron etc. Works,* 89 Mich. 249, 50 N. W. 850; *Stern v. Michigan Cent. R. Co.,* 76 Mich. 591, 43 N. W. 590.) Even when machinery is defective, so that otherwise a recovery might be had for an injury received, yet if the promoting cause of the injury is the negligence of a fellow-servant, no recovery can be had. The same rule must apply when the appliances for doing work are defective." (*Kevern v. Gold etc. Min. Co.,* 70 Cal. 394, 11 Pac. 740; Wood on Master and Servant, 2d ed., pp. 828, 830, sec. 426.)

Lyttleton Price, for Respondent.

It is the duty of the master not to expose the servant in performing his duties to hazards or perils which may be guarded against by proper diligence. (*Hough v. Railway Co.,* 100 U. S. 213; *Railroad Co. v. Fort,* 17 Wall. 553; *Wabash Ry. Co. v. McDaniels,* 107 U. S. 454, 2 Sup. Ct. Rep. 932.) The promise to repair "removes all ground for the argument

that the servant by continuing the employment engages to assume the risk." (*Conroy v. Ironworks,* 22 Mo. 35; *Patterson v. Railroad Co.,* 76 Pa. St. 389, 18 Am. Rep. 412; *Le Clair v. Railroad Co.,* 20 Minn. 9; Cooley on Torts, 559; *Greene v. Railway Co.,* 31 Minn. 248, 47 Am. Rep. 785, 17 N. W. 378.) The cause was properly submitted to the jury. The peremptory instruction asked for would have been error, if given. (*Reddon v. Union Pac. Ry. Co.,* 5 Utah, 344, 15 Pac. 262, and cases cited to this point.)

MORGAN, J.—The parties by their attorneys filed a stipulation to the following effect:

That the defendant waives upon appeal all exceptions to the amount of the verdict, and consents that the grounds of excessive damages stated in defendant's notice of intention to move for a new trial may be stricken from the record, and defendant admits, for the purposes of this appeal, that the injuries proved to have been received by the plaintiff were sufficient to support the amount of damages found by the jury, if plaintiff was entitled to recover damages against the defendant, and it is agreed that the evidence as to the character of the plaintiff's injuries and the amount of damages sustained by plaintiff be stricken from the record. This eliminates from the record and from consideration in this court all questions, except the question as to whether the verdict is against the law, and as to whether improper evidence was permitted, and whether improper instructions were given or refused.

The evidence shows that the plaintiff was injured in repacking the bucket upon the pump-rod; that he had done this work but once before the occasion on which he was hurt; that this was the eighteenth day of July, 1886; that one Abel Rowe was foreman of the said mine, and that when the plaintiff undertook to repack the bucket he discovered that the doorpiece to the chamber, which is usually taken off for the purpose of repacking the bucket, had been broken. This was on or about the eighteenth day of July, 1886.

The plaintiff, sworn as a witness on his own part, in reference thereto, testifies as follows: "I was a pumpman, and was employed for that purpose on the Ida Elmore mine. I worked on the night shift. I am acquainted with the working of the

Cornish pump—the kind used in this mine. Have been mining all my life. Abel Rowe was foreman of the mine; he was my superior officer. When I was going to work on the evening of the seventeenth day of August, 1886, I met Mr. Rowe. He told me that the bucket at the fourth level was failing, and that it would have to be changed so that I could get the water up for the men to work in the morning. After supper I told the men I was going to change the bucket, and told them to stop at the three-hundred foot level.. The men got all the blocks down, made the frame fast, and then I went down. We lifted the pump column about two feet; then I put a block under it, right between the two joints. This block was there for that purpose. The men lowered the column back onto this block; then I called up to them to screw up the yokes tight, as tight as they could draw them. I told the men then to take off the blocks and put them on the bucket rod, which they did, and then lifted it up to where we had to change it. I took off the old bucket and put on the new one. I then called to them to lower away. They tried to lower the bucket to its place, but it was tight. I put my hands into the top to keep it straight and make it go into the cylinder. The men above gave the rod a little jar and the whole thing came down on my arms, and I was fastened right there. I told the men to take the yokes off the bucket-rod, put them on the column and lift it off. They did this and got me out, and afterward took me to the surface. This is not the usual way of changing the bucket. When the column is the same size as the working barrel, we took the bucket clear out at the top and changed it, otherwise we took off the door-piece. I could not take it out at the doorpiece because it was broken and had been mended in such a way that it could not be taken off. I first knew the doorpiece was broken on the 16th to the 18th of July. I changed the bucket then. I put this block in between the joints where the column was broken. It was a three by four scantling, about two feet long. I used everything there was there to make it safe. There was nothing else there to use. I met Mr. Rowe the next morning, and asked him if the doorpiece that was lying there at the surface would not fit. He said it would exactly. I said, "You had better have that new one put on, because if there are any slips when

a man is changing the bucket, he will have his arms cut off." He said he would ask Captain Anthony, superintendent, about it. I asked him afterward if he had seen Captain Anthony about it. He said he had, and that he said he would have the new doorpiece put on as soon as possible. It went on three or four days, and I spoke to Mr. Rowe again. He said he had been talking to Captain Anthony about it, and he (the captain) said he was going to change the pole. Rowe then told me they were going to lower the pole. This would do away with the draw-lift with the broken door. They wanted to get ore enough ahead to keep the mill running while they were making the change. Somewhere about the first week in August, I met Captain Anthony myself. He asked me how things were going. I told him there was nothing on the main rod, if the thing should break, to keep it from going to the bottom of the shaft, and in case of a breakage when the men are changing the bucket, there will be some man get hurt, if not killed. He said they were going to change the pole from the third level to the fourth, and do away with that draw-lift with the broken doorpiece that was there. He said he was going to do it as soon as they got quartz enough ahead to keep the mill running while they were making the change. If the doorpiece had not been broken, we would have lowered the bucket down from the working barrel to the chamber, and changed the bucket through there. This would have been perfectly safe. I had to call the men to help me fix the pump. The night I was hurt I called five or six men—might be seven. I could not have put in more props; if we had we could not work to fix the bucket. I changed the bucket twice while I was there; the first time about the 16th to the 18th of July, and then when I was hurt. I did it the first time the same way as the last. The column might have been supported without the block being put in. It might stay all right, but I did not think it safe. I put the block in to make it perfectly safe. I considered that when I had the block in and the yokes up tight, it was pretty safe. I thought the thing was safe enough. I considered I was taking very little chances when I had the prop in. I can't hardly say that I considered that it was taking any chances. I had no suspicion it would fall."

George Slack, sworn on the part of the defendant, testified as follows: "That the bucket was put in a number of times while I worked there, and was always done the same way; that is, by breaking the pump column and lifting the bucket to this place and changing it there. Never, so far as he knew, changed at the doorplate. Didn't know whether the doorpiece was then broken or not. Sometimes the block was used between the parts, and sometimes it was not. Either way he considered safe. He assisted in changing the buckets himself every day while there."

P. E. Erickson, sworn, testifies that he was a machinist, and had been one for years; that he understands the Cornish pumps, and describes the method of changing the bucket on the pump. The witness swears that the yoke will hold up, when properly screwed up, more than you can put on it; that it will hold between three and four tons; that this column above where it was taken apart with the rod, would not weigh over ten or eleven hundred. In a test they put on three thousand four hundred and sixty pounds, and it held it up. If the yoke was screwed up tight, any little shaking done on the top would not shake it down. This a man who had never tightened up the yokes could not be trusted to do, unless he was shown how first. The proper place to change the buckets in a Cornish pump is through the doorpiece, but this was broken and it could not be done there. That pipe does not rest on timber at all. It is suspended by the yokes altogether, and works that way.

Donovan, for the defense, swears that sometimes the pump in the Elmore mine was filled with water, and they could not change the bucket at the doorpiece; then they would have to break the column in the same way this was done. That he had assisted in doing this since this accident occurred, and it was safely done. "All the precaution necessary is to screw the yokes up tight; sometimes we put a pair of blocks on. Have been working as shift boss and foreman in that mine two years and had charge of the pump. I have changed the bucket there many times. In doing so, we tightened the yokes and sometimes put a block in below; at other times we would not. One yoke will hold sixty-five feet of the column and the pump-rod."

E. Koch, sworn, witness on the part of the defense. He swears that he is a mining engineer, and has made it a study. Knows how much one yoke will support; has made a test. It will support three thousand six hundred pounds, and would support more.

C. S. Watson, an experienced mining man, swears that the column may be suspended by the yokes with perfect safety; no danger at all. If the yoke was properly screwed up, there was no danger at all. Yokes are generally used; sometimes yokes and props. There is always more risk in breaking the column and changing the bucket than in changing it at the door. In the latter case there will be no risk at all.

There is much of the testimony on this subject that we have not thought it necessary to copy into the opinion, as it substantially agrees with that already given. A few facts must be held to be fully proven. The pump was defective, in that it had a broken doorpiece to the chamber below where the bucket worked. While the evidence shows that the bucket might be changed in safety, or in comparative safety, by uncoupling or breaking the column, still the fact remains that if the doorpiece had been whole, and in good condition, so that the bucket could have been changed, through the doorpiece, that the accident would not have occurred and the plaintiff would not have been hurt. The court is unable to say that this accident was the result of carelessness on the part of Smith, the fellow-servant who screwed up the nuts on the yoke. Smith was not only a fellow-servant, but he was at the time under the direction of the plaintiff. He seems to have had considerable experience in working with bolts and in screwing up nuts with the wrench. Had worked some time—about two years—with bridge companies, and was doing this kind of work when so engaged. He swears that he screwed up those bolts as tight as it could be done; thinks he went over them three times at least.

Plaintiff swears that he put the stull in, which was there for that purpose. There was no negligence on the part of plaintiff; that is apparent to the court. The question as to whether there was contributory negligence on the part of the plaintiff, or his fellow-servant was a question for the jury, and we cannot disturb the verdict on this ground. The evidence shows

that all means were used which were at hand to make the necessary work safe.

The next question for the court is a more difficult one. Plaintiff knew of the danger as soon as he discovered the broken doorpiece, which he did about July 18th. They refused to fix it then, but told him they would fix it on the first of the month. He had two or three conversations with Rowe, the foreman, in regard to this before the first day of August, 1886. The first of the month passed and it was not fixed. He saw the superintendent, Anthony, and spoke to him about it, and warned him that if anything slipped when they were changing the bucket some man would get hurt or killed. Anthony replied that he was going to change the pole and do away with the chamber with the broken doorpiece as soon as they got ore enough ahead to keep the mill running. There was then a promise at each time that the complaint was made that an arrangement would be made that would do away with the danger. The time at last was left in uncertainty. Had the plaintiff a right to rely on this promise and continue on his work? There was also the fact that he had been obliged to change this bucket but once in the two months he had been there at work. Under these circumstances, could he remain in the employment without taking the risk upon himself?

In *Hough v. Railway Co.*, 100 U. S. 217, Justice Harlan says: "The master is under obligations, whether a natural person or a corporation, not to expose the servant when conducting the master's business to perils or hazards against which he may be guarded by proper diligence upon the part of the master. To that end the master is bound to observe all the care which prudence and the exigencies of the situation require, in providing the servant with machinery or other instrumentalities adequately safe for use by the latter."

"If the servant, after discovering the defect in the machinery, continues to use it without giving notice to the proper officer of the company, he would undoubtedly be guilty of such contributory negligence as to bar a recovery, so far as such defect was found to have been the efficient cause of the injury. But there can be no doubt that where the master has expressly promised to repair a defect, the servant can recover for an injury

caused thereby, within such a period of time after the promise as it will be reasonable to allow for its performance, and as we think for an injury suffered within any period which would not preclude all reasonable expectations that the promise might be kept." (*Hough v. Railway Co.,* 100 U. S. 224; *Conroy v. Iron Works,* 62 Mo. 35; *Patterson v. Railway Co.,* 76 Pa. St. 389, 18 Am. Rep. 412; *Le Clair v. Railroad Co.,* 20 Minn. 9.) Cooley on Torts, section 559, says: "If the servant, having the right to abandon the service because it is dangerous, refrains from doing so, in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless, or until, he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume the risks." Justice Harlan further says, in *Hough v. Railway Co., supra:* "We may add that it was for the jury to say whether the defect in the pilot was such that none but a reckless engineer, utterly careless of his safety, would have used the engine without it being removed. If, under all the circumstances, and in view of the promises to remedy the defects, the engineer was not wanting in due care in continuing to use the engine, then the company will not be excused for the omission to supply proper machinery upon the ground of contributory negligence." (See, also, *Ford v. Fitchburg R. R. Co.,* 110 Mass. 261, 14 Am. Rep. 598; *Laning v. New York etc. R. R. Co.,* 49 N. Y. 521, 10 Am. Rep. 417.)

The facts in *Hough v. Railway Co., supra,* are almost precisely similar to those in the case at bar. In both cases, the plaintiff knew of the defects in the machinery, and complained to the proper person to have the defects remedied. It was not done, but a promise was given that it would be remedied within a reasonable time. In the case of the defective engine, the appliances were in constant use, while in the case at bar there was no danger whatever, except when they were required to change the bucket. The plaintiff had been required to change the bucket but once before the accident occurred; embracing a period of over two months. Then it was done without any accident, but after this time the plaintiff repeatedly complained

to the foreman and the superintendent of the defective pump, and was promised that it should be fixed, or the use of the chamber with the defective doorpiece done away with; and the promises seemed to be such that he had a right to rely upon. This was also a question for the jury. (*Greene v. Railway Co.*, 31 Minn. 248, 47 Am. Rep. 785, 17 N. W. 378.)

*O'Rourke v. Union Pac. Ry.*, 22 Fed. 191, is cited by appellant, and the following language quoted: "He (the employee) has the right to wait a reasonable time to consider the circumstances of the case, and to give notice to his employers that he is in danger—time enough to see whether the employer means to have the defect remedied; time to see the general way in which he conducts his business; and if he finds that he intends to use defective machinery or to conduct his business in a dangerous manner; finds it is to be his habit; finds that after he had been notified he still intends to conduct his business in that way, and then goes on and continues in the work, it is fair to presume that he takes the risk." This may be assumed to be the law, and no one knows better than the attorneys for the appellant that the language of the court in this, and any case, must be taken with reference to the facts in such case.

In the above case the facts were that the plaintiff was a car-repairer; that he was accustomed to make such repairs as could be made, with the car to be repaired, standing with other cars on the sidetrack; that it was the duty of the company to furnish him with a red flag, to set up near where he was at work, to warn the engineer that he was at work under the car, and that the car must not be moved. He had done this work six or eight months and no flag had been furnished him in all that time, and he had asked for none. He had made no request to be furnished with a flag, and while so engaged under a car, repairing it, the cars were moved and he was injured. He was held to have taken the risk upon himself. In the case at bar no such circumstances exist. The plaintiff had been at work for two months, it is true, but he had complained to the foreman on several occasions of the defect in the machinery, and at each time he had been promised that it would be remedied. It was not done, but during all that time he had been obliged to repair the bucket but twice; once very soon after he com-

menced work for the company, again one month afterward when he was hurt; and he had been promised only a short time before the accident occurred that the chamber in which the defect existed would be taken out. Had the plaintiff a right to believe, in view of the statement, that they were going to change the pump, by putting the pole down, and taking away the chamber with the broken doorpiece, thereby removing the danger entirely before he would again have to change the bucket? Might he rely upon the promises? Would a prudent man so conclude, in view of all of the facts, that he had changed the bucket once by using the yokes and prop, which other persons having knowledge of the machinery believed could be safely done. Having repaired the bucket once without accident, he doubtless believed he could do it again with like success, but in doing it the second time he was injured. Under these circumstances it would hardly be said, as a matter of law, that he took the risk. As has been said, this was a question for the jury under all the circumstances of the case, with proper instructions from the court.

The case of *Foley v. Jersey City Electric Light Co.*, 54 N. J. L. 411, 24 Atl. 488, is cited. The language used by the court in this case is very strong, and in some instances seems to overstep the true rule as to assumption of risks by the employee, but in the main the law as laid down is like the other cases. It is substantially stated in the syllabus, which is by the court, and is as follows: "When one enters upon a service he assumes to understand it, and takes all the ordinary risks that are incident to the employment, and where the employment presents special features of danger such as are plain and obvious, he also assumes the risk of those; and 3. The cases rigidly hold the doctrine that the servant takes upon himself such definite and determinate risks as are obvious, and no action will lie against the master for injuries to the servant in such cases, where he has not induced the servant to remain by a promise to remove the danger." There can be no question but these quotations correctly state the law. The servant, when he accepts the service, assumes all the risks incident to the employment—that is, incident to the employment when the employer furnishes proper and reasonably safe machinery, an obligation to do which is

always upon the employer. A risk or hazard which arises from the use of defective machinery is not a risk incident to the employment, and where the machinery is defective and is complained of by the servant, and a promise is given to have the defect remedied within a reasonable time, the servant does not assume the risk incident to the employment with such defective machinery within such time. The court in the above case goes on to say: "If the servant has full and equal knowledge with the master that the machinery or materials employed are defective, and he remains in the service, this may constitute contributory negligence; but if it appears that the master has promised to mend the defect, the mere fact of his continuing in the employment does not of itself, as matter of law, exonerate the master from liability; but the question of contributory negligence is one for the jury." This language is specially applicable to the case at bar, in which promises were made that the defect should be remedied.

In the case of *Alcorn v. Chicago etc. R. Co.,* 108 Mo. 81, 18 S. W. 188, the court held that the servant violated one of the rules of the company, which forbade the switchman going between the cars while in motion to couple or uncouple cars, by reason of which he was injured, and therefor he could not recover. Various propositions of law are stated in this opinion adapted to different circumstances and facts, but they do not differ from those already laid down.

In the case of *Baltimore etc. R. Co. v. State,* 75 Md. 152, 32 Am. St. Rep. 372, 23 Atl. 310, there were no facts that would enable the plaintiff to recover under any state of the case. The principle stated in the opinion of the court does not differ in any respect from those cited in other cases herein mentioned. It appeared that the deceased had been accustomed to pass through the tunnel two or three times a day for two or three months, and was therefore entirely familiar with the tunnel, and had done this without any complaint. He was afterward killed by a projecting roof in the tunnel. It was held under such a state of facts that he assumed all the risks incident thereto. The case is not in point. A reference to the facts in the case of *Gibson v. Railway Co.,* 63 N. Y. 453, 20 Am. Rep. 552, will at once show that it is not at all in point in the case at bar.

Beach on Negligence, section 139, is referred to, and states the true rule under that state of facts, and the next section (140) gives the rule precisely applicable to the facts in the case at bar, thus: "It is the rule applicable to this matter that the servant, when the defect or danger is brought to his knowledge, when he discovers that the machinery or the instrumentalities furnished for his labor are unsafe or unfit, continues in the employment without protest or complaint, he is deemed to assume the risks of such danger, and waives any claim upon his master for damages in case of injury. That is, if he continues in the employment without protest or complaint. The protest or complaint takes it out of the category of those cases where the servant assumes the risk.

It is, of course, true that the employee having notice that the employer intends to use old or defective machinery, may enter into an express contract to use such machinery. If then he is injured thereby, he cannot recover. He may go further. Without an express contract he may enter upon the use of defective machinery, knowing it to be such, or having abundant or even reasonable, opportunity to know its defects or its dangerous character, and continues in the use of such defective or dangerous machinery without complaint, and without any promise on the part of his employer to remedy the defect, or remove the danger, and if he is injured thereby, he cannot recover. (*Hickey v. Taaffe,* 105 N. Y. 26, 12 N. E. 289; *Michael v. Stanley,* 75 Md. 464, 23 Atl. 1095; *Plunkett v. Donovan,* 36 N. Y. St. Rep. 91, 12 N. Y. Supp. 454; *Heyden v. Smithville Mfg. Co.,* 29 Conn. 558.) The state of facts and conditions, however, set forth above do not exist in the case at bar.

It is scarcely necessary to comment upon all the cases cited, as none of them change the principles already announced which govern this class of cases. The general rule is: 1. The servant undertakes, when he engages in a certain kind of work, that he has the necessary skill and experience to perform the work he undertakes; that he understands the management of the machinery necessary to perform this work; the machinery generally used to perform such work, or the particular machinery which he sees is in use, in this particular instance; that he will exercise the ordinary care used by a man of prudence in

performing such work as he has engaged to perform for his employer. If he fails in either of these, and is injured in consequence, he is guilty of contributory negligence and cannot recover. On the other hand, his employer engages to furnish machinery and tools ordinarily used in the performance of such work; that he will keep such machinery and tools in reasonably safe and good condition while such work is being performed. If the employer fails in either of these particulars, and the servant is injured thereby, the servant having filled all the conditions required on his part, can recover a reasonable sum for the damages by him suffered. If the servant, after he engages in the work, discovers that the machinery or tools furnished him for use are defective, or are not in good condition, and that they, or some of them, are dangerous, then he is charged with another duty—that of informing his employer, or his agent who is directing the work, of such defect. If the employer, after being informed, refuses to put the machinery or tools in good condition, then the servant should decline to do the work with such machinery. If he does not do so, and is injured thereby, he cannot recover; but if, when so informed, the employer promises to remedy the defect within a reasonable time, the servant may continue in the work, and if he is injured thereby within such reasonable time, without any fault on his part, he can recover for such injury. The question of the fault of the fellow-servant does not, as we think, enter into this case, as there is no evidence that there was any fault on the part of the fellow-servant.

Tested by these rules, and by the principles hereinbefore stated, with the facts as they appear in evidence in this case, we think the plaintiff is entitled to recover a reasonable amount for the injuries suffered by him. The question as to the amount of damages to which plaintiff is entitled, having been taken out of consideration by the stipulation, we give no opinion in regard to it.

As to the admission of improper testimony. The plaintiff was permitted to prove over the objection of defendant that shortly after the accident occurred the broken doorpiece was replaced with the new one. This was improper evidence, but in view of the fact that we think the plaintiff was entitled to

recover upon the evidence that was entirely competent, it cannot be held to have prejudiced the case of the defendant; the same may be said of other evidence that was questionable.

Objection is made by appellant to the second instruction asked by the plaintiff and given by· the court, and a portion of said instruction is quoted, because no mention is made in said instruction of the ignorance or knowledge of the employee of the actual condition of the appliances and machinery and his consequent assumption of the risk. This point was covered in three or four of the instructions given by the court at the request of defendant, and the instructions must all be taken together.

The third instruction given by the court at the request of plaintiff is objected to on the ground that the jury might infer from it that the servant only assumes ordinary risks, and that although he acts, knowingly and voluntarily, he does not assume extraordinary risks. This defect is also covered by instruction 5 of the court, and also in those given by the court on its own motion, and by instructions 3 and 4 given for defendant. And these instructions are so strongly in favor of the defendant under the circumstances connected with this case, that had the verdict been in favor of the defendant, the plaintiff might well have complained of them; as they ignore the fact that plaintiff had complained of the defect and had been promised that it should be remedied. Instructions 2, 5, 6, 7, 9, 10 and 11, asked on the part of the defendant, while correct as abstract principles of law, are not applicable to this case, for the reason, as stated above, that they ignore the fact that complaint was made by the plaintiff on different occasions, and promises were given that the defective machinery would be repaired or taken away. No. 8 requested by defendant is scarcely intelligible, perhaps by reason of the copy in the record being incorrect; and was properly- refused for that reason.

Judgment affirmed. Costs awarded to respondent.

Justice Sullivan concurs.

Justice Huston, having been of counsel in the court below, took no part in the hearing or determination of this case.