695 P.2d 369

**Sergio SALINAS, Plaintiff-Appellant,**

v.

**Richard P. VIERSTRA and Norma P. Vierstra, husband and wife, dba Classic Dairy, Defendants-Respondents.**

**No. 15236.**

Supreme Court of Idaho.

Jan. 10, 1985.

Rehearing Denied Feb. 27, 1985.

Lloyd J. Webb, of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for plaintiff-appellant.

Robert M. Tyler, Jr., of Elam, Burke, Evans, Boyd & Koontz, Boise, for defendants-respondents.

BISTLINE, Justice.

Sergio Salinas, the plaintiff-appellant, worked for Classic Dairy as a truck driver. When his services were not needed as a driver, he did other work, including helping other Classic Dairy employees feed cattle. Mr. Salinas had worked for Classic Dairy

for over six months when misfortune befell him.

He had returned from a milk-hauling run and joined a group of employees in a cattle-feeding operation. Four workers were involved in the task, each performing a different job. Ken Vierstra, the dairy owner's son, drove a truck pulling trailers stacked high with bales of hay; Wade Gardener stood on top of the bales and dropped the hay to the ground; Mr. Salinas straightened the bales after they were dropped; and Dave Crist cut the strings on the bales.

Mr. Salinas reached down to straighten out a bale that had hit the ground and was subsequently struck by another bale causing the injuries which are the subject of this lawsuit. Mr. Salinas testified that he was several feet behind and to the right of the truck, picking up a bale that had landed awkwardly, when the next bale hit him. Mr. Crist, who was behind Mr. Salinas, was the only witness to see the bale hit Mr. Salinas. Mr. Crist testified that the bale struck Mr. Salinas while he was in the process of pulling another bale from beneath the truck and away from its wheels. As with these two particular accounts, a great deal of varying and conflicting testimony surrounds the case.

Mr. Salinas filed suit alleging negligence by Classic Dairy, its owners, and its employees, in failing to properly supervise, regulate, and inspect Mr. Salinas' working conditions. The Vierstras, owners of Classic Dairy, and the defendants-respondents, denied any negligence on their part or on the part of any of their employees. They alleged, furthermore, as an affirmative defense, that Mr. Salinas' injuries were caused by his own negligence. The case went to trial. The jury found the Vierstras, their employees, and Classic Dairy to have not done anything negligent which was a proximate cause in Mr. Salinas injuries. It is from the judgment pursuant to the jury verdict that Mr. Salinas appeals.

## I.

Mr. Salinas argues that the trial court improperly instructed the jury concerning the doctrine of "assumption of risk." Specifically, Mr. Salinas contends either that the doctrine is no longer available in Idaho for a fact-pattern like the one in this case, or that even if the doctrine does still exist, the instructions tendered leave out essential elements.[1] Since we agree with Mr. Salinas' first contention, we need not address his second.

## A.

An understanding of the bases for and origin of the assumption of risk doctrine will help to explain why that doctrine has no current validity in Idaho except in limited circumstances.

It is important at once to recognize that the doctrine of assumption of risk is a judicially created rule.[2] It was developed by the English common law courts at the

---

1. Instruction No. 14 reads as follows:

   If you find from the evidence presented that the plaintiff, while assisting in the unloading of hay bales, knew the danger, understood and appreciated the risk therefrom, voluntarily exposed himself thereto, and that the danger was the proximate cause of the plaintiff's injuries, then the plaintiff assumed the risk of the occurrence and the verdict must be for the defendants, Richard and Norman Vierstra, doing business as Classic Dairy, with respect to those claims the plaintiff has registered against the above defendants.
   Instruction No. 15 reads as follows:
   Classic Dairy cannot be held liable where the plaintiff elects to take reckless and unnecessary risks.

2. The first case to enunciate the doctrine was *Priestly v. Fowler*, [Ex.1837] 3 M. & W. 1, 150 English Reports 1030. In that case Lord Abinger, C.B. stated:

   [T]o allow this sort of action to prevail would be an encouragement to the servant to omit the diligence and caution which he is in duty bound to exercise on the behalf of his master, to protect him against the misconduct or negligence of others who serve him, and which diligence and caution, while they protect the master, are a much better security against any injury the servant may sustain by the negligence of others engaged under the same master, than any recourse against his master for damages could possibly afford.
   *Id.,* 3 M & W at 7.

beginning of the Industrial Revolution for the purpose of insulating the employer as much as possible from "bearing the 'human overhead' which is an inevitable part of the cost—to someone—of the doing of industrialized business." *Tiller v. Atlantic Coast Line Railroad Co.*, 318 U.S. 54, 59, 63 S.Ct. 444, 447, 87 L.Ed. 610 (1943). The doctrine, in effect, gave maximum legal immunity to industry. *Lyons v. Redding Construction Co.*, 83 Wash.2d 86, 515 P.2d 821, 823 (1973).[3]

Thus, for decades, an employee's suit against his or her employer for personal injuries received as a result of the employer's negligence was often adjudicated in light of the utility of the employer's contract. Eman, "Ohio's Assumption of Risk: The Deafening Silence," 11 *Capitol University L.Rev.* 661, 663 (1982). The inevitable result was non-recovery for the employee. The effect of this was to place the costs of industry's growth upon the workers.

In addition to its application in the employer-employee context, the doctrine over time expanded and grew, embedding itself in virtually every type of negligence law. Wherever it was found to apply, the doctrine's effect was the same: to bar any recovery by the plaintiff.

Despite the doctrine's growth during the first half of this century, it has most recently been on the defensive. Legal commentators and courts alike have criticized it for the unfairness and harshness it causes,[4] and for the duplicity and confusion it en-

genders.[5] The doctrine's unfairness is rooted in its "all-or-nothing" approach. That is, a plaintiff can recover only if he or she is found not to have assumed the risk that caused the injury. Once the risk is found to have been assumed, however, the plaintiff is barred from any recovery, even if the risk the plaintiff assumed was reasonable and the defendant was negligent toward the plaintiff. This result is similar to that which is reached when the common law defense of contributory negligence is found to apply.

The doctrine's duplicity and confusion is a result of its broad overlap with the common-law defense of contributory negligence. To understand this overlap, an analysis of the types of assumption of risk is necessary.

According to Harper and James, there are basically two types of assumption of risk. The first is an express agreement by the plaintiff to assume the risk. The second is the nature of plaintiff's conduct in deciding whether to assume the risk. In other words, whether plaintiff's decision to assume the risk was reasonable or unreasonable.[6] *See* 2 Harper and James, *supra*, § 21.1.

The result of reasonably assuming a risk is that the plaintiff is denied recovery. The reason for this is that the plaintiff's assumption of risk is viewed as "only the counterpart of defendant's lack of duty to protect the plaintiff from that risk." *Id.* In other words, the defendant is viewed as

> The phrase "assumption of risk" is an excellent illustration of the extent to which uncritical use of words bedevils the law. A phrase begins life as a literary expression; its felicity leads to its lazy repetition; and repetition soon establishes it as a legal formula, undiscriminatingly used to express different and sometimes contradictory ideas.
>
> *See also,* Harper and James, *supra,* at § 21.8.

**6.** It is important to note that the determination of reasonableness here is made by weighing the risk of plaintiff's conduct with its utility. No comparison is made between plaintiff's conduct and defendant's conduct.

**3.** The United States Supreme Court stated that the doctrine is founded in a *laissez faire* public policy of protecting industry. *See Tuttle v. Detroit, Grand Haven, & Milwaukee Railroad,* 122 U.S. 189, 196, 7 S.Ct. 1166, 1168, 30 L.Ed. 1114 (1887). (Non-liability of employers for work-caused injuries was "a rule of public policy, inasmuch as an opposite doctrine would ... subject employers to unreasonable and often ruinous responsibilities, thereby embarrassing all branches of business.")

**4.** *See, e.g., Williamson v. Smith,* 83 N.M. 336, 491 P.2d 1147, 1149 (1971); *Prosser and Keeton on Torts,* § 68 at 493–94 (5th ed.1984).

**5.** *See, e.g., Tiller, supra,* at 318 U.S. 68–69, 63 S.Ct. at 451–52 (J., Frankfurter, concurring):

having committed no negligence, for any duty to care that would give rise to such liability never arose.

The result of unreasonably assuming a risk is also to preclude plaintiff from recovery. The reason for this is that an unreasonable assumption of risk is but a form of contributory negligence. Prosser & Keeton, *supra*, § 68, at 481.[7] In this instance, since either defense barred recovery, it made little difference what the defense was called. Accordingly, many courts in non-comparative negligence settings have used both defenses interchangeably without attempting to distinguish between the two.[8] This has caused much confusion. Some states have attempted to distinguish the two defenses but have only further muddied any understanding of the applicability of the doctrine.[9]

Further confusion concerning the doctrine's applicability has arisen with the adoption of comparative negligence liability in many states. Recognizing that the scope and effect of contributory negligence and assumption of risk overlap quite often, and acknowledging the policies underlying comparative negligence, a majority of courts and legislatures have either merged the two defenses or abolished assumption of risk as a defense.[10] The result has been to eliminate the doctrine's total bar from recovery.

Idaho has likewise been critical of the assumption of risk defense. In *Fawcett v. Irby*, 92 Idaho 48, 54–56, 436 P.2d 714, 720–22 (1968), Justice Spear, in a concurrence joined by the rest of the members of the Court, severely criticized the doctrine for the confusion it creates. Justice Spear urged the "complete banishment of the assumption of risk doctrine in Idaho" with two exceptions: (1) where there is an employer-employee relationship outside the scope of the Worker's Compensation Act; and (2) where the plaintiff expressly consented with the defendant to assume any risk involved.

Subsequent to *Fawcett, supra,* Idaho enacted its own comparative negligence statute, I.C. § 6–801.[11] The statute does away with the illogical and unfair results often reached by the "all-or-nothing" rule of the contributory negligence defense.[12] The

---

**7.** In a non-comparative negligence system under the common law, any form of contributory negligence, no matter how insignificant, is a complete bar to recovery. The same is true with assumption of risk. Prosser & Keeton, *supra,* § 65 at 451–52, § 68 at 481.

**8.** For example, in *Harvey v. Alturas Gold Mine Co.,* 3 Idaho 510, 525–28, 31 P. 819, 823–24 (1893), the first case in Idaho in which the assumption of risk doctrine is acknowledged and discussed, the Court also used the term "contributory negligence" interchangeably. *See also,* Prosser & Keeton, *supra,* § 68.

**9.** *See, e.g., Fawcett v. Irby,* 92 Idaho 48, 54–55, 436 P.2d 714, 720–22 (1968) (Spear, J., concurring); *Williamson, supra,* 491 P.2d 1147.

**10.** *See, e.g.,* CONN.GEN.STAT.ANN. § 52–572h(c); MASS.GEN.LAWS ANN. ch. 231, § 85; N.Y.C.P.L.R., vol. 7B, § 1411; OR.REV.STAT. § 18.475(2); UTAH CODE ANN. § 78–27–37; *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); *Lyons v. Redding Construction Co., supra; Springrose v. Willmore,* 292 Minn. 23, 192 N.W.2d 826 (1971); *Meistrich v. Casino Arena Attractions, Inc.,* 31 N.J. 44, 155 A.2d 90 (N.J.1959).

**11.** The statute reads as follows:

**Comparative negligence—effective contributory negligence.**—Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence or gross negligence resulting in death or an injury to person or property, if such negligence was not as great as the negligence or gross negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering.

**12.** The California Supreme Court in *Li v. Yellow Cab Company of California, supra,* 119 Cal.Rptr. at 862–63, 532 P.2d at 1230–31, articulated well the reasons behind the move away from the harsh all-or-nothing system of contributory negligence to a comparative negligence system which apportions liability based on fault:

It is unnecessary for us to catalogue the enormous amount of critical comment that has been directed over the years against the "all-or-nothing" approach of the doctrine of contributory negligence. The essence of that criticism has been constant and clear: the doctrine is inequitable in its operation because it fails to distribute responsibility in proportion to fault. Against this have been raised several

statute is silent, however, with respect to the assumption of risk doctrine. It is thus time to reconsider the applicability of this defense to Idaho's comparative negligence system for allocating liability.

## B.

■ The policy of insulating business from "human overhead," however valid it may have been during the infancy of the Industrial Revolution, is diametrically opposed to current social policy and thought, which is to promote safety and protect the employee in his or her working environment.[13] Furthermore, the "all-or-nothing" effect of application of the assumption of risk defense is inequitable. It runs counter to all sense of reason and fairness. This is particularly true in today's age of comparative negligence; it would be the ultimate legal inconsistency to reject contributory negligence as an absolute defense yet at the same time allow its effect to continue under the guise of assumption of risk. The scope of I.C. § 6–801 is broad. It is not limited to certain types of action; it is not limited by exceptions. Rather, it covers any action in which the plaintiff is seeking to recover on grounds of negligence.[14] Section 6–801's intent is clear: Contributory negligence is not to be a complete bar to recovery; instead, liability is to be apportioned between the parties based on the degree of fault for which each is responsible.[15]

■ We find no reason that justifies the continued use of assumption of risk as an absolute bar to recovery in light of I.C. § 6–801's mandate and intent. Rather, we think reason and logic compel us to hold that § 6–801 applies to any use of assumption of risk as a defense, with one exception that we will discuss below. Therefore, assumption of risk shall no longer be available as an absolute bar to recovery in any action instituted in this state. As we mentioned above, to hold otherwise, would be to perpetuate a gross legal inconsistency by prohibiting the use of contributory negligence as an absolute bar yet allow its effect to continue under the guise of assumption of risk.

Furthermore, to avoid the confusion created by this doctrine, we hold that the use of assumption of risk as a defense shall have no legal effect in this state. The types of issues raised by a plaintiff's non-express assumption of risk are readily handled by resort to contributory negligence principles. Thus, such issues should be discussed in terms of contributory negligence, not assumption of risk, and applied accordingly under our comparative negligence laws.

arguments in justification, but none have proved even remotely adequate to the task. The basic objection to the doctrine—grounded in the primal concept that in a system in which liability is based on fault, the extent of fault should govern the extent of liability—remains irresistible to reason and all intelligent notions of fairness.

Furthermore, practical experience with the application by juries of the doctrine of contributory negligence has added its weight to analyses of its inherent shortcomings:

"Every trial lawyer is well aware that juries often do in fact allow recovery in cases of contributory negligence, and that the compromise in the jury room does result in some diminution of the damages because of the plaintiff's fault. But the process is at best a haphazard and unsatisfactory one."

(Citations omitted.)

13. I.C. § 72–201, Idaho's Worker's Compensation Act, states Idaho's policy toward workers. It reads in part:

The welfare of the state depends upon its industries and *even more upon the welfare of its wage workers.* (Emphasis added.)

14. The extent of the Idaho legislature's commitment to a comparative fault system for allocating liability is further highlighted by the 1980 adoption of the Idaho Product Liability Reform Act. I.C. § 6–1401 through –1409. Section 6–1404 of the Act states that a person's recovery may be reduced in the proportion to which the plaintiff was responsible for the harm suffered. This is noteworthy, for it indicates the legislature's intent in applying principles of comparative negligence not only in the field of negligence law, but also in the field of products liability law, which has heretofore operated under principles of strict liability.

15. This is true so long as plaintiff's negligence is not equal to or greater than the defendant's negligence. I.C. § 6–801.

■ The one exception to our holding today involves a situation where a plaintiff, either in writing or orally, expressly assumes the risk involved. In such a case, the plaintiff's assumption of the risk will continue to be a complete bar to recovery. Again, in order to avoid misunderstanding and confusion, the terminology of assumption of risk, however, should not be used. Rather, since express assumption of risk clearly sounds in contract and not tort, *see* Eman, *supra,* "Deafening Silence," at 680, the correct terminology to use to assert this defense should be that of "consent" or something of a similar nature.

With one important exception, we acknowledge the validity of a contractual assumption of risk operating as a total bar to recovery. The exception is the general contract rule that contracts which violate public policy are not recognized. *See, e.g., Whitney v. Continental Life and Accident Co.,* 89 Idaho 96, 403 P.2d 573 (1965); *Worlton v. Davis,* 73 Idaho 217, 249 P.2d 810 (1952).

### C.

Relying upon *Fawcett, supra,* the Vierstras argue that assumption of risk has retained its current validity in the area of employer-employee relations. As previously mentioned, Justice Spear, in *Fawcett,* argued that assumption of risk should not be used except in the area of employer-employee relations or where the plaintiff expressly contracted to assume the risk involved. *Id.,* 92 Idaho at 54, 436 P.2d 714. The special concurrence was joined in by all the other justices.

■ Although we agree with Justice Spear's second exception, for several reasons, we hold that the first one is no longer a correct statement of the law in Idaho. First, Justice Spear's concurrence was written *before* Idaho's enactment of its comparative negligence statute. *Fawcett* was written in an environment of "all-or-nothing" recoveries with contributory negligence operating as a complete defense. Such is not the case any more. Written under a now outdated liability system, *Fawcett's* applicability and persuasiveness has decreased dramatically.

Second, we can find no logical reason for singling out employer-employee suits and allowing assumption of risk to continue to be used as a defense. Justice Spear offered no reason. In fact, the reasons he mentioned for discrediting the use of the defense apply equally to employer-employee cases, too.

■ The best explanation we can hypothecate for Justice Spear's retention of the defense in employer-employee suits is that of *stare decisis.* In discussing the issue of allowing assumption of risk to continue to be used in employer-employee cases, the Justice cited *Williams v. Collett,* 80 Idaho 462, 332 P.2d 1032 (1958); and *Deshazer v. Tompkins,* 89 Idaho 347, 404 P.2d 604 (1965). Both cases were employer-employee suits in which the defense of assumption of risk operated to bar any recovery for the plaintiff. While we are cognizant of the importance *stare decisis* plays in the judicial process, we are not hesitant to reverse ourselves when a doctrine, a defense, or a holding in a case, has proven over time to be unjust or unwise. In *Smith v. State,* 93 Idaho 795, 801, 473 P.2d 937, 943 (1970), we said:

> The court in the proper performance of its judicial function is required to examine its prior precedents. When precedent is examined in light of modern reality and it is evident that the reason for the precedent no longer exists, the abandonment of the precedent is not a destruction of stare decisis but rather a fulfillment of its proper function.
>
> Stare decisis is not a confining phenomenon but rather a principle of law. And when the application of this principle will not result in justice, it is evident that the doctrine is not properly applicable.

For the reasons outlined above, *see, supra,* I.A. and I.B., we do not think *stare decisis* is a valid reason to continue allowing defendants to use assumption of risk as a defense in any case, including employer-

employee suits. The fact that we have held assumption of risk to be an inappropriate defense, except where the plaintiff has expressly consented to assume the risk, does not, however, readily resolve the issues of this case. Thus, we must turn now to the case at hand and apply the rules we have enunciated to the facts at hand.

## II.

The Vierstras argue that the district court's instructions concerning assumption of risk, if erroneous, were harmless error because the jury specifically found the Vierstras and their employees not negligent. Thus, the argument goes, since the Vierstras were found not to be negligent, the jury did not need to consider whether Mr. Salinas had in fact assumed the risk of his harm.

The Vierstras cite numerous cases, including *Hayslip v. George*, 92 Idaho 349, 442 P.2d 759 (1968), and *Gayhart v. Schwabe*, 80 Idaho 354, 330 P.2d 327 (1958), for the proposition that an erroneous instruction does not constitute reversible error where the instructions taken as whole neither mislead nor prejudice the plaintiff. While we agree with these propositions, we disagree with the Vierstras' conclusion. We find the instructional errors in this case to be misleading and fatally prejudicial to Mr. Salinas.

We stated in *Bushong v. Kamiah Grain Inc.*, 96 Idaho 659, 661, 534 P.2d 1099, 1101 (1975), that an "instruction complained of must be read and construed with the other instructions given" in determining whether the complained of instruction constitutes reversible error. We do not find that the remaining instructions cure the erroneous statement of law by Instruction Nos. 14 and 15. It is entirely too plausible that the jury may have reached its verdict based on or guided by the erroneous instructions.

This conclusion is supported by the fact that nowhere on the special verdict form is there a place for the jury to decide if Mr. Salinas did assume the risk of his injuries. Instruction Nos. 14 and 15 both state that Mr. Salinas is barred from any recovery if the jury finds that Mr. Salinas either assumed the risk of the harm caused or took unnecessary risks. It is therefore reasonable to conclude that the jury would have simply checked "no" for Question No. 1, which denies Mr. Salinas any recovery, if it did in fact decide that Mr. Salinas had assumed the risk involved. This, we find, prejudices Mr. Salinas and justifies our reversing the district court, entitling Mr. Salinas to have a trial free from instructional error.

For the foregoing reasons, we reverse and remand to the district court for a new trial.

Costs to appellants; no attorney's fees.

DONALDSON, C.J., and HUNTLEY, J., concur.

SHEPARD, J., dissents without opinion.

BAKES, Justice, dissenting:

While I agree with the conclusion of Justice Bistline that the enactment of the Idaho comparative negligence statute, I.C. § 6–801, *et seq.*, precludes the application of the doctrine of assumption of risk on the facts of this case, the court's instructions on the assumption of the risk were not reversible error in this case because the jury never got to the assumption of the risk issue because it found no negligence on the part of the defendants. Upon that basis I would affirm the judgment of the district court.