The Denver Tramway Company, Appellant, v. Reid, Appellee.

| 4 | 53 |
|---|---|
| 17 | 195 |
| 17 | 199 |
| 4 | 53 |
| 19 | 75 |

1. Negligence a Question of Fact.

Questions of negligence upon the part of the defendant, and of contributory negligence of the plaintiff in an action for damages, are purely questions of fact to be determined by the jury.

2. Prima Facie Negligence.

The fact that injuries received by the passenger were caused by electricity and that the car was so charged with the fluid as to injure a person by a contact with any part of it, if not establishing negligence *per se*, makes such a case as to require a defense.

3. Evidence—Physician's Opinion.

The opinion of a family physician who had the injured party under his care, based upon his own personal knowledge, is admissible in evidence touching the question as to the probability of a recovery.

4. Cross-examination.

It is within the line of legitimate cross-examination to ask a witness, who had in his examination in chief testified that electricity could not be transmitted to a car in quantity sufficient to cause injury, if all the cars on the line did not have on the metal railing around the ends thereof blisters caused by the leakage and escape of electricity.

5. Practice.

A party cannot complain of the violation of a rule of evidence which he himself had first disregarded by inquiry concerning facts and conditions concerning which the testimony objected to was afterward introduced.

6. Appellate Practice.

Errors that are not shown to have been prejudicial will be disregarded on appeal.

7. Care required of Carrier.

A carrier of passengers operating its cars by means of electricity is bound to use extraordinary care and is liable for slight negligence.

8. Same.

The law requires a degree of care proportionate to the nature and risks in the given case.

9. Negligence Presumed.

Where an injury occurs to a passenger through a defect in the construction, working or management of the vehicle or anything pertaining to the service which the carrier ought to control, a presumption of negligence arises.

10. Negligence—Drunkenness.

Drunkenness on the part of the plaintiff at the time of an injury would

not relieve the defendant from liability if guilty of negligence ; and, if the plaintiff by want of ordinary care contributes to the injury, he must assume the responsibility, regardless of his condition.

*Appeal from the District Court of Arapahoe County.*

THE action was brought by appellee to recover damages for personal injuries sustained by the alleged negligence of appellant in its management of its cars in his transportation from one part of the city to another. The following is the complaint :—

" The plaintiff complains of the defendant and for a cause of action against it alleges—

" That the defendant is a corporation organized and existing under and by virtue of the laws of the state of Colorado.

" That the plaintiff was, at the time of the grievances hereinafter complained of, and has been during the most of his life since he arrived at maturity, a blacksmith by trade, and at the time of the grievances hereinafter complained of he was working at and carrying on his said business of a blacksmith in the city of Denver, and earning thereby a good living for himself and his family ; and, further, that he had no other means of earning a living for himself and his said family except by his said trade.

" And the plaintiff further alleges that on, to wit, the 9th day of September, A. D. 1890, the defendant was, and for a long time prior thereto had been, the owner of and operating a certain line of railway in the said city of Denver, county and state aforesaid, for the purpose of transporting passengers to and from different portions of said city, and that said railway was and is operated by means of electricity conveyed along the route of said road by means of overhead wires.

" That upon, to wit, the said 9th day of September, A. D. 1890, the plaintiff was upon one of the trains of the defendant company as a passenger thereon, for the purpose of being carried and transported from one part of said city of Denver to another part of said city in consideration of the sum of 5 cents, then and there paid by the plaintiff to the defendant,

in consideration of which sum the defendant undertook to carry and transport the plaintiff from, to wit, at or near the corner of Twenty-fourth and Humboldt streets, in said city, to, to wit, the corner of South Ninth street and Tenth avenue, in said city, and that while the plaintiff was in the act of getting off and alighting from the cars of the defendant, and without any fault or negligence whatever on the part of the plaintiff, the said train of the defendant was so negligently and carelessly operated and handled by the said defendant, and the said electricity by which said train was operated was so carelessly, negligently and unskillfully used, that an unexpected and sudden jerk or motion was communicated to the said train, whereby the plaintiff was violently and with great force thrown down upon the track upon which said cars were running and between the cars of said train, and through the negligent conduct of the said defendant, and by reason of the negligent, careless and unskillful manner in which said train and said electricity was used and operated, the plaintiff received on, upon and into his body large quantities of said electricity, and that, by means of said electricity, his whole system was greatly burned, shocked and injured, so that by means of the fall occasioned by the sudden motion of said train as aforesaid, and by means of the powerful shock received from the electricity aforesaid, and the burns aforesaid, the plaintiff was greatly and severely hurt, bruised and injured in and throughout his limbs, his body and his whole system, and that his limbs and body have been and still are, to a considerable extent, paralyzed and rendered unfit for their ordinary functions and uses, and that he was otherwise severely hurt, bruised and injured generally throughout his whole body and limbs by being so thrown down as aforesaid, and by means of said electricity aforesaid, and that said hurts, burns, bruises and injuries aforesaid, so caused by the negligence of the defendant as aforesaid, are of a permanent and lifelong character, and have to the present time, and, at all times hereafter, will prevent the plaintiff from doing or performing manual labor; that he has suffered great pain and

anguish on account of the hurts and injuries so received as aforesaid, and still suffers. And so the plaintiff alleges that he has been damaged, by reason of the premises, in the sum of $20,000.

" And the plaintiff further alleges that, on account of the hurts, burns, bruises and injuries aforesaid, he was compelled to employ physicians and nurses to render him assistance and to take the necessary and proper care of him ; that the charges made by said nurses and physicians amount to the sum of $1,000 ; that said charges are reasonable and proper, and all of which the plaintiff is obliged to pay on account of the said negligent conduct of the said defendant.

" Wherefore, the plaintiff demands judgment for the sum of $21,000 and costs of suit."

To which appellant answered, denying the allegations of the complaint, and for a second or further answer, alleged :

" That neither it nor its agents, servants or employees was guilty of the carelessness, negligence and improper conduct in the complaint alleged, and says that the injury therein described, if any there was, was caused by the fault and negligence of the plaintiff himself."

Replication of plaintiff traversing answer.

The issues so made were tried to a jury, to which, among many others, the following instructions were given, contended by appellant to have been erroneous :

" I. The court instructs the jury that the defendant company is a carrier of passengers, operating its cars by means of electricity, and is bound to use extraordinary care, and is liable for slight negligence. And, on the other hand, the plaintiff, as a passenger on such car of the defendant, was bound to use ordinary care to guard against accident or injury. And by such ordinary care is meant that care which a person of common prudence takes of his own concern, or that degree of care which men of common prudence exercise about their own matters and their own personal safety. And in determining what would be ordinary care in a particular case, reference must be had to all the circumstances and surroundings

of that case. And if, all the circumstances and surroundings considered, the plaintiff in this case used such ordinary care in preparing to get off the defendant's car, and in alighting therefrom, then he is not guilty of contributory negligence in producing the injury complained of and for which this suit is brought. And getting up from his seat and preparing to get off of the car before the car had fully come to a standstill, but was very slightly moving, was not contributory negligence on the part of the plaintiff, unless such getting up from his seat and otherwise preparing to get off the car and alighting therefrom was done in a careless or negligent manner, all the circumstances and surroundings considered. For, if such negligence—if there was any—on the part of the plaintiff was slight or the remote cause of the injury, he may recover, notwithstanding such slight negligence or remote cause. And, although the plaintiff may have been guilty of misconduct or failure to exercise ordinary care and prudence which may have contributed remotely to his injury, yet, if the agents of the defendant company were guilty of mismanagement or negligence in the management of said car, which was the immediate cause of the injury to the plaintiff, and, with the exercise of extraordinary care by such agents, said injury might have been prevented, the defendant is liable in this suit.

" And the jury are further instructed that, in arriving at a conclusion as to whether the plaintiff was guilty of contributory negligence at the time of the happening of the accident, they may take into consideration the natural instinct of self-preservation that any person under ordinary conditions will take care of himself from regard for his own life.

" And further, the jury are instructed that, if the injury complained of was done to the plaintiff by the electricity used by the defendant for motive power or in any other wise, or by any other means, or on account of the failure of the defendant to use extraordinary care about the operation of its said road and cars, then the defendant company is liable in this suit, unless the plaintiff had failed to use ordinary care and prudence in preparing to leave said car and alighting therefrom,

and, even if he failed to use such ordinary care and prudence, the defendant company is still liable if this failure to use ordinary care and prudence on the part of the plaintiff was the remote, and the negligence of the defendant company was the immediate cause of said injury."

" II. The presumption is that the plaintiff used ordinary care and prudence at the time of the alleged injury, and it is incumbent upon the defendant to prove that the plaintiff did not use such ordinary care and prudence, and to prove that the want of such ordinary care and prudence on the part of the plaintiff was the immediate and not the remote cause of the injury complained of."

" V. The court instructs the jury that intoxication on the part of the plaintiff, if the jury believe the plaintiff was intoxicated, is not, as a general rule, in itself, as a matter of law, such negligence or evidence of such negligence as will bar his recovery in this action. The law refuses to impute negligence as, of course, to a plaintiff from the bare fact that at the moment of suffering the injury he was intoxicated. Intoxication is one thing and negligence sufficient to bar an accident for damages quite another thing. Intoxicated persons are not removed from all protection of law. If the plaintiff used that degree of care incumbent upon him to use, under the circumstances of this case, as explained to you in a previous instruction, then his intoxication, if you believe from the evidence he was intoxicated, had nothing to do with the accident. When contributory negligence is one of the issues, as in this case, it must appear that the plaintiff did not exercise ordinary care, and that, too, without reference to his inebriety. The question is whether or not the plaintiff's conduct came up to the standard of ordinary care—not whether or not the plaintiff was drunk."

It is claimed that the last is in conflict with the 10th, which is :

" X. The court instructs the jury that plaintiff alleges that he was injured, without any fault or negligence whatever, while alighting from defendant's cars. The court instructs

you that you must be satisfied from the evidence offered in the case that such was the fact, and if you find from the evidence that just before and while plaintiff was attempting to alight from defendant's train he was under the influence of liquor to such an extent as to prevent him from exercising reasonable care and caution in controlling the movements of his body, although he might not have been entirely under its influence, and that such inability of plaintiff to so control his actions caused or tended to cause his receiving the injuries he claims in attempting to alight from defendant's train, then the plaintiff was not without fault, and your verdict must be for the defendant."

Other supposed errors in receiving and rejecting evidence will be noticed in the discussion of the case.

The jury found for the appellee with damages of $5,500.

Mr. James H. Brown and Mr. Milton Smith, for appellant.

Messrs. Markham & Carr, for appellee.

Reed, J., delivered the opinion of the court.

The fact that serious injuries were received by appellee, the nature, extent and consequent effect of such injuries and the manner in which they were received, were well established by the testimony, appear to have been practically conceded by appellant, no serious effort having been made to in any manner contradict them.

The question of negligence on the part of the appellant corporation and contributory negligence upon the part of the plaintiff were the only important issues involved. Those having been found by the jury in favor of the plaintiff, unless serious legal error occurred upon the trial, either in the admission or rejection of evidence, or in the instructions to the jury as to the law of the case, such verdict cannot be disturbed.

The questions of negligence upon the part of the defendant and contributory negligence of plaintiff are purely questions of fact, to be determined by the jury, not of law.  No principle is better settled, both in the United States and England.

In Beach on Con. Neg., sec. 163, it is said :—" In general it cannot be doubted that the question of negligence is a question of fact, not of law.  Whenever there is any doubt as to the facts, it is the province of the jury to determine the question ; or, whenever there may reasonably be a difference of opinion as to the inferences and conclusions from the facts, it is likewise a question for the jury.  It belongs to the jury, not only to weigh the evidence and to find upon the questions of fact, but to draw conclusions as well, alike from disputed and undisputed facts."  And in a note the text is supported by almost innumerable authorities from every state in the Union.

In *Detroit etc. R. Co. v. Van Steinburg*, 17 Mich. 99, Judge Cooley said, at page 118 :

" Negligence, as I understand it, consists in a want of that reasonable care which would be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury.  The injury is, therefore, one which must take into consideration all these circumstances, and it must measure the prudence of the party's conduct by a standard of behavior likely to have been adopted by other persons of common prudence.  Moreover, if the danger depends at all upon the action of any other person under a given set of circumstances, the prudence of the party injured must be estimated in view of what he had a right to expect from such other person, and he is not to be considered blamable if the injury has resulted from the action of another which he could not reasonably have anticipated.  Thus the problem is complicated by the necessity of taking into account the two sets of circumstances affecting the conduct of different persons, and is only to be satisfactorily solved by the jury placing themselves in the position of the injured

person, and examining those circumstances as they then presented themselves to him, and from that standpoint judging whether he was guilty of negligence or not. It is evident that such a problem cannot usually be one upon which the law can pronounce a definite sentence, and that it must be left to the sifting and determination of a jury."

Although in all cases, both civil and criminal, the rule of law is well settled that it is the province of the jury to determine facts, it seems to be regarded as peculiarly within their province in cases of alleged negligence and contributory negligence, where, as in this case, the negligence of one, or combined negligence of both, resulted in serious injury. And the reason undoubtedly is, as stated by Judge Cooley, " that the problem is complicated by the necessity of taking into account the two sets of circumstances affecting the conduct of different persons."

In England in *Met. Railway Co. v. Jackson*, 3 L. R. App. Cas. 193, it was said : " Whether there is reasonable evidence to be left to the jury of negligence occasioning the injury complained of, is a question for the judge. It is for the jury to say whether and how far the evidence is to be believed."

In *Dublin etc. Ry. Co. v. Slatterly*, 3 L. R. App. Cas. 1155 : " When there is conflicting evidence on a question of fact, whatever may be the opinion of the judge who tries the cause as to the value of that evidence, he must leave the consideration of it for the decision of the jury."

In *Brown v. Gt. West. Ry. Co.*, Law Times, vol. 52, 652, (1885,) the court said : " In an action of negligence, if the plaintiff gives evidence of negligence on the part of the defendant, and also gives evidence which may or may not be considered as amounting to contributory negligence on his own part, the case ought to be left to the jury." And see, *Davey v. London etc. Ry. Co.*, 12 L. R., Q. B. Div. 70 ; *Martin v. Northern etc. Ry. Co.*, 16 Com. B. 179.

One important branch or factor in the case seems to be ignored or overlooked, or at least not treated in argument with the consideration its importance required, viz., the serious

injury from electricity caused by coming in contact with the lower part of the car after falling. The negligence in operating the cars, whereby the plaintiff was thrown in such position as to come in contact with the electrical charge, may, undoubtedly, be regarded as the proximate cause of the injuries. The negligent application and use of the electric current by which the metallic portions of the trail car became charged, was the cause of the damage to the person by shock and burning. The first, proximate and direct, the other, resulting; both united caused the damage to the person, consequently both must be regarded. The car was a "trail," supposed to be entirely free from the influence of the motive power which was applied to the motor car. It was alleged in the complaint "that, by reason of the negligent, careless and unskillful manner in which said train and said electricity was used and operated, the plaintiff received on, upon and into his body large quantities of said electricity, and that, by *means of said electricity*, his whole system was greatly burned, shocked and injured, so that by means of the fall occasioned by the sudden motion of said train * * * *and by means of the powerful shock received from the electricity*," etc.

The fact being established that injuries were caused by electricity and that the car was so charged with the fluid as to injure a person by contact with any part of it, if not establishing negligence *per se*, made such a *prima facie* case as to require defense, either to show that the injuries were not caused by that agency or through the careless use of the agent. No effort was made upon the trial to show that the injuries were not caused by electricity, as stated in the complaint and established by the evidence, nor was the presence of the fluid explained or attempted. It is true Mr. Ballow, an electrical engineer in the employment of the company, was called and testified, the result of his evidence being that he knew nothing whatever about it, nor even what car it was; that it was his duty to cause every car to be examined at the station, that he had given such orders and presumed the examination had been made in the station the night after

the accident happened, etc.; all of which was not of the least importance, the question being what the electrical condition was at the time of the injury; that certainly could not be determined by the examination hours afterward of the car detached from the motor and "housed." Mr. Ballow and a Mr. Dashiell testified, as expert electricians, that the cars were so coupled, constructed and insulated, that it, in their opinion, would be impossible for the trail car to become so charged with electricity as to cause injury to a person coming in contact with any part of it. However expert, scientific and learned they may have been upon the subject and however honest, what they or either of them thought in regard to it was of very little importance when confronted with the facts and results established and uncontradicted.

In *Flannery v. Waterford etc. Ry. Co.*, 11 Irish Rep., C. L. 30, it was said: "When a plaintiff sustained injuries in consequence of a portion of the train in which she was traveling having left the rails, and the railway, the engine and the carriages were under the management of the company: *Held*, that the fact of the accident was sufficient evidence to cast upon the company the burden of showing that there was no negligence on their part; and that, as they declined to afford any explanation of the cause of the accident, there was a case for the plaintiff proper to be submitted to the jury."

Taking up the supposed errors in admitting testimony, Dr. Hart was asked, " From *your* knowledge of this case, what would you say as to the probability of his ever recovering his physical power?" Counsel says, " this question was objected to as not being a proper hypothetical question, that it was not based on the facts proven or assumed to be proven." This was evidently the result of a misconception. Dr. Hart was plaintiff's family physician, had had plaintiff in his care from the time of the injury—still had him in his care. He was not called as an expert to testify upon a hypothetical case presented, but as to facts within his own knowledge, and he was asked, not to testify from facts stated by others, but what he knew. He was asked, " From your knowledge of

this case," etc.   Even if an expert, the objection is answered by the first authority cited by counsel in support of his contention.   Rogers on Exp. Tes., sec. 46.

"*His opinion to be admissible must be founded either upon his own personal knowledge of the facts,* upon facts testified to in court, or else upon a hypothetical question."

Mr. Ballow, an electrical engineer employed by the company, attempted by his evidence in chief to establish the fact that electricity could not be transmitted to a trail car in quantity sufficient to cause injury.   On cross-examination he was asked, "I will ask you as a matter of fact, if all the cars running on the Lawrence Street line, belonging to the Denver Tramway Company, haven't blisters upon the metal railing around the ends of the cars, caused by a leakage of electricity?   Are there not blisters on these the size of my thumb nail on the metal caused by this escape of electricity on the rear car?"

The questions were objected to as irrelevant and immaterial, because not limited to the particular car and about the time of the accident.   Counsel seems to have overlooked the fact that witness knew nothing about the accident until the next day and did not know the car upon which it happened, but had upon direct examination testified generally that in the cars as constructed and operated no appreciable amount of electricity could be transmitted to the "trail" car. Such being the fact, the questions asked appear to have been in the line of legitimate cross-examination.

An instructive case upon evidence in this class of cases is *Simpson v. London General Omnibus Co.,* 8 L. R. C. P. 390 :

"A passenger in an omnibus was injured by a blow from the hoof of one of the horses which had kicked through the front panel of the vehicle.   There was no evidence on the part of the passenger that the horse was a kicker; but it was proved that the panel bore marks of other kicks and that no precaution had been taken, by the use of kicking strap or otherwise against the possible consequence of a horse striking out, and no explanation was offered on the part of the

owner of the omnibus: *Held*, that there was evidence of negligence proper to be submitted to a jury." If evidence of other hoof marks upon the panel was admissible upon direct examination, and sufficient to convict the horse of being a "kicker," it seems that the questions, on cross-examination, under the facts and circumstances of this case, were eminently proper.

Defendant offered to prove by Holland, a passenger, that no other passengers getting on and off the car at about the same time were injured by electricity. Refusal of the court to admit the evidence is assigned for error and urged in argument. The refusal was proper; the fact sought to be proved could have no bearing upon the questions at issue. In order to be admissible, under any circumstances, it would have to have been shown that some other person was in exactly the same position in regard to the car and earth as the plaintiff, immediately before or at the exact time of the injury. Probably no other person was so situated as to receive the charge by personal contact or otherwise. One person, by contact, might receive the entire charge from a dynamo or battery, while twenty others in the same room experienced no sensation whatever. If a person were known to be killed by lightning, bore unmistakable marks of the current, it would hardly be competent to attempt to rebut the fact by proof that no other person, or all persons, in the same vicinity, were not killed.

An attempt was made by the defendant to show that plaintiff was intoxicated at the time of receiving the injury, and that such condition contributed. On cross-examination of plaintiff the following occurred:

" Q. Do you ever indulge in intoxicating liquor? A. Sometimes take some.

" Q. How long have you had that habit prior to the receipt of this injury? A. I don't know. I have always been in the habit. I never was a teetotaler. I never was intoxicated but once in my life.

VOL. IV—5

" Q. You have been in the habit of drinking intoxicants before the receipt of this injury?   A. Yes, sir.

" Q. About how frequently did you indulge?   A. Well, maybe once in a day; maybe sometimes not for a month. or two, and sometimes not for twelve months.

" Q. What do you usually drink?   A. Sometimes a little beer and sometimes a little whisky.

" Q. Have you ever been under the influence of intoxicants?   A. Not since I have been out in this country, that I know of.

" Q. You still keep up the habit of indulging once in a while, of indulging in beer and whisky?   A. Yes, sir.

" Q. Do you remember whether you had been indulging in or drinking whisky or beer on the day of this accident?   A. No, sir.

" Q. Are you quite positive that you hadn't been indulging that day?   A. No, I don't think it.   I might have taken one."

Defendant attempted to prove by witnesses Walker, Sei-ffler and Holland that plaintiff was intoxicated.   In rebuttal plaintiff produced his wife, daughter and a Mr. Cooper to show it was not a fact, and by them his general character for sobriety was shown.   This is claimed to have been error. Counsel says : " There was no evidence offered by defendant as to intoxication at any other time, nor did the defendant in any way attack the character or reputation of plaintiff Reid for sobriety.   All of the evidence on this question was directed solely to his condition immediately before, at and immediately after the accident."   If this, as contended for, is the proper rule, defendant cannot complain of its violation, having at the very outset disregarded it in the examination of the plaintiff by inquiry regarding his habits for years. Such being the fact, the jury were entitled to all the facts, not only as to his condition at the time of the injury, but as to his general character for sobriety.   It would be competent for a person charged with drunkenness to show he never drank, for a person charged with being drunk at a particular time that he had not taken liquor.   Mr. Walker, considered

by the defendant an important witness, testified to the intoxication and contributory negligence of plaintiff.   Mr. Ustick was called by plaintiff and examined in regard to a burglary committed near Walker's place of business, and was asked: "Now I will ask you to state whether he (Walker) was arrested?   Also state whether he (Walker) was arrested for the offense?"   To which the witness answered: "Mr. Walker was taken into custody at that time and taken to the city hall, and was released then at the city hall."   Although perhaps technically erroneous, it carried with it its own antidote. Errors that are not shown to have been prejudicial are disregarded.   The answer in regard to the arrest also shows the dismissal of the charge and release, exonerating the witness. It can hardly be presumed that this attempted attack upon the character of the witness could have prejudiced defendant, more particularly as the defendant afterwards recalled witness Walker and he was allowed to establish his own innocence of the charge.

In argument the 1st and 2d instructions are considered together.   It is objected, 1st, "that they are general instead of being specific.   They do not advise the jury what facts, if found by the jury to be shown by the evidence, will constitute the case negligence, proximate and remote cause and contributory negligence which are referred to therein.   In short, they refer to the jury both matters of law as well as matters of fact."   Again, "They stated mere abstract propositions of law.   They were not put hypothetically, as they should have been."

We do not think them amenable to such criticism.   Instead of being general and abstract propositions of law unapplied, they seem to be a full and complete statement of the law of negligence as applicable to the case, and specifically applied in every paragraph to the issues and the facts to be found by the jury.   How they could have been more definitely or specifically applied is not shown, nor can we discover.   Specific objection is made to the following language of the 1st instruction: "The court instructs the jury that the defendant

company is a carrier of passengers operating its cars by means of electricity *and is bound to use extraordinary* care, and is liable for slight negligence." It is contended that it is not the law. The authorities cited in support of the contention do not sustain it. The most that can be deduced from them is that the rule does not apply, where the injury may have been caused by the act of a stranger, nor where the injury resulted from some voluntary act of the passenger himself, combined with some alleged deficiency in the carrier's means of transportation or accommodation. The first, " the act of a stranger," was certainly not involved; and whether the acts of the plaintiff concurring with the negligence of the plaintiff combined to cause the injury, was the very question the jury were called upon to determine, and what negligence on the part of the plaintiff would relieve the defendant from the rigor of the rule was clearly and definitely stated.

Applying the rule as intended and applied by the court to cars operated by electricity and the management and use of the motive power, by which it was shown the injury was produced, it is eminently correct. The agent employed, common experience has taught, is one dangerous to life, even when the utmost skill and prudence of best trained electricians are exercised. It is a subtle, imponderable death-dealing element or fluid; of its nature or the laws governing it very little is known, even among those few most advanced in the study of it. It may be harnessed, utilized as a motive power and made to perform much economic service in mechanics, but as to its nature and vagaries nothing is known. Is is full of surprises, and deals injury and death under what is deemed the most prudent management, and under what are supposed to be the circumstances least liable to inflict injury. In the use of such an agent extraordinary care in its management is required. Every appliance and precaution, as well as the best skill of men, should be applied in its use. How little is known of its eccentricities and possibilities, by even those most skilled and familiar with it, was shown upon the trial of this case, where the rear car was charged with it

and the plaintiff received the charge, and his wounds were the undisputed and indisputable evidence of the agency by which they were caused; instead of explaining or showing the conditions to have resulted through no negligence of those in charge, two experts were put upon the stand who testified to the impossibility of the rear car being charged. Aside from the deadly agent used as motive power, the charge of the court, that the defendant was bound to use extraordinary care and would be liable for slight negligence, is warranted by the authorities. "The law requires a degree of care proportionate to the nature and risks in the given case." *Johnson v. Hud. R. etc.*, 20 N. Y. 65.

"Passenger carriers bind themselves to carry safely those whom they take into their coaches, *to the utmost care and diligence of very cautious persons.*" *Maverick v. Eighth Av. etc.*, 36 N. Y. 378.

"A carrier of passengers by railway is required to show, that an injury to a passenger resulted from inevitable accident, or from something against which no human prudence or foresight could provide." *Sullivan v. Railroad Co.*, 30 Pa. St. 234; *Meier v. Railroad Co.*, 64 Pa. St. 225; *R. R. Co. v. Napheys*, 90 Pa. St. 135; *Warren v. Fitchburg R.*, 8 Allen, 233; *Phila. v. Derby*, 14 How. (U. S.) 486; *New World v. King*, 16 How. (U. S.) 469; See *Scott v. London Dock Co.*, 3 Hurl. & Colt. (Eng. Exc.) 596.

In *Smith v. St. Paul R. Co.*, 32 Minn. 1, it is said: "The severe rule which enjoins upon the carrier such extraordinary care and diligence is intended, for reasons of public policy, to secure the safe carriage of passengers in so far as human skill and foresight can effect such result. From the application of this strict rule to carriers, it naturally follows that, where an injury occurs to a passenger through a defect in the construction or working or management of the vehicle or anything pertaining to the service which the carrier ought to control, a presumption of negligence arises." In 50 Am. Rep. 550, the case is supported by several pages of notes and almost numberless authorities.

It is next contended that the court erred in charging the jury " that, in arriving at a conclusion as to whether the plaintiff was guilty of contributory negligence at the time of the happening of the accident, they may take into consideration the natural instinct of self-preservation that any person under ordinary conditions will take care of himself from regard for his own life." This seems to be fully warranted by the authorities.

" In arriving at a conclusion as to whether the plaintiff has been guilty of contributory negligence, the natural instinct of self-preservation and the known disposition of men to save themselves from harm and injury, raises the presumption that the plaintiff is not guilty of negligence." Moak's Underhill on Torts, 312, where a large number of authorities are cited in support of the text. 2 Thomp. on Neg. 1179 ; *Railroad Co. v. Gies*, 31 Md. 357 ; *Dublin etc. R. Co. v. Slatterly*, 3 L. R. App. Cas. 1155.

It is stated that the court gave all the instructions asked by both parties ;—1 to 5 (both inclusive) asked by the plaintiff, 6 to 12 (both inclusive) on the part of the defendant. It would be strange under the circumstances if they did not conflict more or less. It is contended that the 5th instruction given is erroneous and conflicts with the 10th, given at the prayer of the defendant. Counsel says, " This instruction commences by advising the jury that intoxication in itself, as a matter of law, is not such negligence as will bar his recovery in this action," and ends by advising the jury that " It must appear that the plaintiff did not exercise ordinary care, and that, too, without reference to his inebriety. The question is whether or not the plaintiff's conduct came up to the standard of ordinary care—not whether or not the plaintiff was drunk." It requires considerable ingenuity to find fault with the language cited. It, in effect, properly states the law to be that the questions being tried were the negligence of the defendant and the contributory negligence of the plaintiff; not whether the plaintiff was at the time intoxicated. That drunkenness on the part of plaintiff would not

relieve the defendant from liability, if guilty of negligence, and that, drunk or sober, if the plaintiff, by want of ordinary care, contributed to the injury, he must assume such responsibility, regardless of his condition. We cannot well see how it could have been different. If drunk, he was held responsible for his negligence, and if drunk it can hardly be contended that it gave the defendant, for that reason, the right to kill or maim him ; but, if known, imposed greater care on the defendant. But the evidence failed to establish drunkenness, and the jury were warranted in disregarding it. The court would have been warranted in entirely withdrawing the question from the jury.

Owing to the importance of the case, the questions involved, and the great industry and ability with which it has been presented, we have examined carefully each point urged and the authorities cited in support, and find no serious error. In fact it appears that the defense was allowed unusual latitude, and, if any criticism of the instructions were to be indulged in, it would be that those given for the defendant were fully as favorable as warranted, and when in conflict with those given for the plaintiff were more so. It follows that the judgment must be affirmed.

*Affirmed.*