(November 24, 1906.)

EMMA ADAMS et al., Appellants, v. BUNKER HILL AND SULLIVAN MINING COMPANY, a Corporation, Respondent.

[89 Pac. 624.]

NONSUIT—SHOULD ONLY BE SUSTAINED WHEN.

1. A nonsuit should only be granted when· the evidence wholly fails to support the demand of plaintiff.

2. Where the evidence shows that a part of machinery of respondent was in a damaged condition, and that by reason thereof an employee in the discharge of his duty could become entangled in such machinery and lose his life or suffer great bodily injury through no fault of his, it is a *prima facie* case, and it is error to sustain a motion for nonsuit.

(Syllabus by the court.)

APPEAL from District Court of the First Judicial District for Shoshone county.   Hon. Ralph T. Morgan, Judge.

Plaintiffs commenced their action to recover $40,000 damages for the loss of life of the husband and father.   At the close of the evidence for plaintiffs a motion for nonsuit was sustained and judgment for costs against plaintiffs.   The appeal is from an order overruling a motion for a new trial. *Reversed.*

F. C. Robertson, Harry Rosenhaupt, Fred Miller and H. P. Knight, for Appellants.

The instinct of self-preservation and the disposition of men to avoid personal harm re-enforce an inference that a person killed or injured was in the exercise of ordinary care. (16 Cyc. of L. & Pr. 1056; *Texas & C. Ry. Co. v. Gentry*, 163 U. S. 353, 41 L. ed. 186, 16 Sup. Ct. Rep. 1104; *Choctow O. & G. C. Co. v. McDade*, 191 U. S. 64, 48 L. ed. 962, 24 Sup. Ct. Rep. 24; *Milwaukee N. Y. & St. P. R. Co. v. Kellogg*, 94 U. S. 469, 24 L. ed. 256.)

Knowledge of the risk of the danger to which deceased was exposed is not to be presumed in proof of contributory negligence, but must be brought home to the employee. (*Missouri Pac. R. R. Co. v. Lemberg*, 75 Tex. 61, 12 S. W. 838; *Smith v. Peninsular Car Works*, 60 Mich. 501, 1 Am. St. Rep. 542, 27 N. W. 662; *Wabash R. R. Co. v. McDaniel*, 107 U. S. 454, 27 L. ed. 605, 2 Sup. Ct. Rep. 932.)

It is the province of the jury to determine as to the defendant's negligence under the facts in this case. (*Sioux City & Pacific R. R. Co. v. Stout*, 17 Wall. 657, 21 L. ed. 745; Labatt on Master and Servant, 330, and cases cited.)

In the absence of proof that the deceased was guilty of negligence, the jury was authorized to infer the want of any from the circumstances of the case, and the disposition of men to take care of themselves and keep out of difficulty may be taken into consideration by the jury. (*Wash. & G. R. Co. v. Gladmon*, 15 Wall. (82 U. S.) 401, 21 L. ed. 114.)

In civil cases it is sufficient if the evidence agrees with and supports the hypothesis which it is adduced to prove, and it is not necessary that it should exclude other hypotheses in order to enable the plaintiff to recover, but the case should be submitted to the jury, and the jury should decide according to the reasonable probability of the truth. ( Greenleaf on Evidence, 5th ed., sec. 13a; *Union Stockyards Co. v. Conoyer*, 41 Neb. 617, 59 N. W. 950; *Scheopper v. Hancock Chemical Co.*, 113 Mich. 582, 71 N. W. 1081; *Woods v. Chicago Ry.*

*Co.*, 108 Mich. 396, 66 N. W. 328; *Western Travelers' Acc. Assn. v. Holbrook*, 65 Neb. 469, 91 N. W. 276, 94 N. W. 816; *Barnowski v. Helson*, 89 Mich. 523, 50 N. W. 989, 15 L. R. A. 33; *Lillstrom v. Northern Pac. R. R. Co.*, 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587; *Philadelphia etc. R. R. Co. v. Huber*, 128 Pa. St. 63, 18 Atl. 334, 5 L. R. A. 439; *Portland Min. Co. v. Flaherty*, 111 Fed. 312, 49 C. C. A. 361; *Pruke v. South Park Foundry Co.*, 68 Minn. 305, 71 N. W. 276; *Indianapolis P. & C. Ry. Co. v. Collingwood*, 71 Ind. 476; *Miller v. Inmen & Co.*, 40 Or. 161, 66 Pac. 713; *Hays v. Galligher*, 72 Pa. St. 136; *Indianapolis P. & C. Ry. Co. v. Thomas*, 84 Ind. 197.)

The proximate cause of an injury is ordinarily a question for the jury. It is to be determined as a fact in view of all the circumstances attending it as shown by the evidence. (*St. Louis etc. Ry. Co. v. Needham*, 69 Fed. 823, 16 C. C. A. 457; *Armour v. Hahn*, 111 U. S. 318, 28 L. ed. 440, 4 Sup. Ct. Rep. 433.)

M. A. Folsom and A. H. Featherstone, for Respondent.

In order to entitle plaintiff to recover for personal injuries, or to recover for the death of one owing the duty of support to plaintiff, it must be shown affirmatively that defendant has been guilty of negligence which resulted in such injuries or death. (*Patton v. Texas & Pac. Ry. Co.*, 179 U. S. 661, 663, 45 L. ed. 361, 21 Sup. Ct. Rep. 275.)

The rule requiring the master to supply safe machinery and keep it in reasonable repair does not apply to the defects arising which are not of a permanent character, and do not require the help of skilled mechanics to repair, but which may easily be and usually are remedied by the workmen, and to repair which proper and suitable materials are supplied; there is no duty resting on the master to inspect *during their use* those common tools and appliances with which every one is conversant. (*Creagan v. Marston*, 126 N. Y. 568, 22 Am. St. Rep. 854, 27 N. E. 952; *Whittaker v. Bent*, 167 Mass.

588, 46 N. E. 121; *Wachsmuth v. Shaw Elec. Co.*, 118 Mich. 275, 76 N. W. 497; *Garrigan v. Falls River Co.*, 158 Mass. 596, 33 N. E. 652.)

The testimony shows that Adams frequently stopped the machinery and tightened the loose rivets, and that it was his particular duty to supervise the machinery and see that it was in proper repair. If there were defects in the belt, there could be no recovery. (*Bedford Belt Co. v. Brown*, 142 Ind. 659, 42 N. E. 359; *McDermott v. Iowa Falls Co.*, 85 Iowa, 181, 52 N. W. 181;*Beckman v. Consol. Coal Co.*, 90 Iowa, 252, 57 N. W. 889; *Conroy v. Clinton*, 158 Mass. 318, 23 N. E. 527; *Johnson v. Hovey*, 98 Mich. 343, 57 N. W. 172; *Jennings v. Iron Bay Co.*, 47 Minn. 111, 49 N. W. 685; *Maes v. Tex. & N. O. R. Co.* (Tex. Civ. App.), 23 S. W. 725; *Minty v. Union Pac. Co.*, 2 Idaho, 471, 21 Pac. 660.)

*Adams knew of the conditions and assumed the risk.* No principle of law is better settled in this state than the principle that workmen assume the risk of dangers known to them, or which by ordinary care they might have known. (*Drake v. Union Pac. R. Co.*, 2 Idaho, 487, 21 Pac. 560; *Haner v. Northern Pacific Ry. Co.*, 7 Idaho, 13, 35 Pac. 700, 122 L. R. A. 725; *Holt v. Railway Co.*, 4 Idaho, 443, 40 Pac. 56.)

The following cases illustrate the principle that a workman with little experience assumes the risk of ordinary defects: *Connelly v. Eldredge*, 160 Mass. 566, 36 N. E. 469; *Wilson v. Mass. Cotton Mills*, 169 Mass. 67, 47 N. E. 506; *Sanborn v. Atchinson Ry. Co.*, 35 Kan. 292, 10 Pac. 1860; *Probert v. Phipps*, 149 Mass. 258, 21 N. E. 370; *Downey v. Sawyer*, 157 Mass. 418, 32 N. E. 654.

STOCKSLAGER, C. J.—Plaintiffs commenced their action in the district court of Shoshone county, alleging the death of Richard Adams on the thirtieth day of November, 1902, while in the employ of defendant corporation, and that his death was the result of the faulty construction and operation of a certain belt used for conveying the ore in the mill or concentrator of defendant, and the careless and negligent

use of such belt.   It is alleged that said Richard Adams was the husband of plaintiff, Emma Adams, and the father of Ellen C. Adams and Virgil F. Adams, minors.   The prayer of the complaint is for $40,000 and costs.

A demurrer was filed to the complaint which is not shown by the record to have been disposed of; hence we assume it was withdrawn, as an answer was filed denying all allegations of the complaint as to negligence on the part of defendant in the equipment or maintenance of the belt and other machinery connected with said concentrator, or that the cause of the death of said Richard Adams was in any way traceable to the condition of the belt or defendant's negligence or carelessness in any manner.   On the issues thus joined a jury was impaneled, and when plaintiffs had submitted their evidence a motion for nonsuit was interposed as follows:

"1. Because the plaintiffs have failed to prove a sufficient case for the jury.

"2. Because the plaintiffs have failed to show that defendant was guilty of any negligence causing the death of Richard Adams.

"3. Because the undisputed evidence shows that Richard Adams, deceased, knew the danger or, by the exercise of ordinary care, could have known of the danger and assumed the risk.

"4. Because the undisputed evidence fails to show that the death of Richard Adams was not caused by obvious defects in the machinery used by him, or from hazard incident to the business, or from causes known to exist by him, or which he might have known by the exercise of ordinary care."

The motion was sustained by the court, a judgment entered for costs in favor of defendant, a motion for a new trial was overruled and the appeal is from the judgment.   The errors assigned are as follows: 1. That the decision is against law; 2. Errors of law occurring at the trial and excepted to by the plaintiffs; 3. Accident and surprise which ordinary prudence could not have guarded against.

The only question presented by the record for our deter·
mination is whether the evidence was sufficient to support a
judgment on the findings of the jury in favor of the plain-
tiffs in case they so found on the proofs before them. Ap-
pellate courts' do not favor nonsuits; the trend of modern
decisions is to discourage them. An analysis of the evidence
in this case as shown by the record discloses the following
facts:

Deceased was employed by defendant as a guard to pro·
tect its property at different times. He was not what is
termed a practical millman, was not foreman of the concen-
trator at the time of the accident, did not have charge of the
repair of the machinery, such work being under the control
of the foreman. It was usually repaired at noon or between
shifts. Mr. Adams' duty was to place rosin on the belt to
keep it from slipping when it was heavily loaded. The belt
was used for carrying ore from the ore bins into the concen-
trator and to prevent the spouts from filling up. Charles
LaFevere testified that at the time of the accident the belt
was not in good condition. "It had been torn in one place
for about seventy feet." It was shown that bolts would be-
come loose in the belt, and this condition could not be detected
when the machinery was in operation. There were no eye-
witnesses to the accident that resulted in the death of Mr.
Adams. It is shown, however, by the evidence of Mr. La-
Fevere that he saw the body after death. He says: "When
I was notified he was killed he had gone around the pulley
and was lying on the other side; his head was in the pulley
like, and his body was pushed up against the timber." By
another witness it was shown that portions of cloth that re-
sembled his sweater or jumper were taken from the bolts in
the belt. There was other evidence introduced as to the char-
acter of the belt and the danger from the loose bolts when
the machinery was in operation to anyone who attempted to
supply the rosin to keep the belt from slipping when heavily
loaded. We are of the opinion that the motion for nonsuit

should have been denied.    (*Later Bros. v. Hayward, ante,* p. 78, 85 Pac. 494, and cases cited.)

The judgment is reversed with costs to appellants.

Ailshie, J., and Sullivan, J., concur.

### ON REHEARING.

(April 13, 1907.)

PERSONAL INJURY—NEGLIGENCE OF MASTER—DEATH OF SERVANT—PRESUMPTIONS AS TO FREEDOM OF SERVANT FROM NEGLIGENCE.

1. In an action against the master for damages caused by the death of the servant as a result of the master's negligence, the presumptions which arise in favor of the instincts of self-preservation and the known disposition of men to avoid injury and personal harm to themselves, constitute a *prima facie* inference that the servant was at the time in the exercise of ordinary care, and was himself free from contributory negligence. In case where the injury complained of resulted in the death of the injured person, the law presumes that such person exercised the measure of care which it was his duty to exercise.

2. Where the evidence in a personal injury case is so uncertain as to leave it equally clear and probable that the injury resulted from any one of a number of causes that might be suggested, then and in that case a verdict for plaintiff would be pure speculation and could not be sustained; but where the evidence, although circumstantial, is such that it would appear possible that the injury resulted from any one of several causes, and yet it points to the *greater* probability that it resulted from the specific cause charged by the plaintiff, a nonsuit should not be granted. In the latter case the jury would be justified in returning a verdict in favor of the plaintiff, although it be *possible* that the injury may have resulted from some other cause. The law does not anticipate or attempt to exclude mere possibilities.

3. If, upon any fair construction that a reasonable man might put upon the evidence, or any inference that might reasonably be drawn therefrom, the conclusion of negligence can be arrrived at or justified, then the defendant is not entitled to a nonsuit, but the question of negligence should go to the jury.

4. Where it does not appear that the inspection and repair of the machinery with which the servant was working was a part of the servant's employment, and it also appears that the master was in a more favorable position to know its condition and to inspect and

repair it, and the disrepair and unsafe condition of the machinery· is shown, and was not obvious to the servant, and injury resulted therefrom, and the servant was not familiar with or accustomed to such machinery, and this was known to the master, such facts make a *prima facie* showing of negligence on the part of the master.

(Syllabus by the court.)

F. C. Robertson, Harry Rosenhaupt, Fred Miller and H. P. Knight, for Appellants.

M. A. Folsom, A. H. Featherstone and J. H. Forney, for Respondent on rehearing.

AILSHIE, C. J.—A rehearing was granted in this case and after hearing further argument and again examining the record, as well as the authorities cited, we are satisfied that the conclusion of the court was correct on the former hearing.

The principal contentions made by respondent on the rehearing are that if the injury was caused by any lack of repair of the machinery or a defect in the instrumentalities about which deceased was employed, the defect was so patent and obvious as to put the employee on notice and furnish him with knowledge of the dangers to which he was subjected, and that he was therefore chargeable with notice and assumed the risk.

The other contention is that the plaintiff has failed to show the injured servant's freedom from contributory negligence, and that the burden of establishing that fact rests upon plaintiff.

In the argument of the latter proposition, counsel have called our attention to a number of decisions from this state which they claim furnish a long line of authority to the effect that plaintiff, in order to recover in an action like this, must not only establish the fact that he was injured and that the injury was suffered while in the employ of the defendant, and that such injury was the result of the negligence of the defendant; but must also show that his own imprudence

or negligence did not contribute to the result. The cases that counsel claim establish this doctrine and have accordingly, been impliedly overruled by our decision in the present case, are as follows: *Drake v. Union Pac. Ry. Co.*, 2 Idaho, 497, 21 Pac. 560; *Minty v. Union Pac. Ry. Co.*, 2 Idaho, 471, 21 Pac. 660; *Harvey v. Alturas G. & M. Co.*, 3 Idaho, 510, 31 Pac. 819; *Zienke v. Northern P. Ry. Co.*, 8 Idaho, 54, 66 Pac. 828; *Holt v. Spokane Ry. Co.*, 4 Idaho, 443, 40 Pac. 56; *Haner v. Northern Pac. Ry. Co.*, 7 Idaho, 305, 62 Pac. 1028.

It must be conceded that there is language in some of the foregoing cases which has been employed by the court, apparently upon the assumption that the rule of law is as claimed by the respondent. In *Minty v. Union Pac. Ry. Co.*, *supra*, the court said: "The servant in order to recover for an injury takes the burden upon himself of establishing negligence on the part of the master and due care on his own part, and he is met with two presumptions, both of which he must overcome in order to entitle him to a recovery," etc. In *Holt v. Spokane Ry. Co.*, *supra*, the court quoted the following from *Lehman v. City of Brooklyn*, 29 Barb. 234, with seeming approval: "To entitle plaintiff to recover, it must appear affirmatively that the accident resulted wholly from the negligence of the defendant, and that the negligence or imprudence of the plaintiff did not contribute to the result," and in concluding the discussion of that phase of the case, this court, in speaking of the plaintiff's showing, said: "He has failed to show negligence on the part of the defendant, and has failed to show that negligence on his part did not contribute to the death of the child." Counsel for respondent have, however, seemed to overlook the case of *Hopkins v. Utah Northern Ry. Co.*, 2 Idaho, 300, 13 Pac. 343. That case really appears to be the only one from this court in which the question was squarely presented to the court to determine upon whom rests the burden of proof of contributory negligence. In passing upon that point, Mr. Justice Broderick, speaking for the court, said: "But it is contended that, even though the defendant was negligent, the plaintiff, by the

carelessness of his servant who was at the time in charge of the team, contributed to the result and injury, and that, therefore, the defendant is not liable. . In this case the burden was on the plaintiff to prove, in the first instance, that his property was injured and destroyed, for which he seeks redress, and that such injury was done by the locomotive of the defendant at or about the time and place charged in the complaint, and that such injury was the result of negligence of the agents and servants of the defendant. These facts proven, with the amount of damages sustained, made a *prima facie* case for the plaintiff. Then the burden shifted to, and was cast on, the defendant to overcome the case made by the plaintiff, by showing that the agents and servants of the defendant were on this occasion exercising due care and caution; or, if it relied on such contributory negligence of the plaintiff or his agent as to prevent a recovery of judgment by plaintiff, that was a defense to be proven and established by defendant. (*Railway Co. v. Gladmon,* 15 Wall. 401, 21 L. ed. 114; *Railroad Co. v. Horst,* 93 U. S. 291, 23 L. ed. 898.) We are aware that there has been a contrariety of opinion on this question, but we are entirely satisfied with the rule as settled by the above-cited authority.''

It will be observed that in the foregoing case the court cites *Railway Co. v. Gladmon* with approval. In the latter case, Mr. Justice Hunt, speaking for the supreme court of the United States, said: ''The plaintiff may establish the negligence of the defendant, his own injury in consequence thereof, and his case is made out. If there are circumstances which convict him of concurring negligence, the defendant must prove them, and thus defeat the action. Irrespective of statute law on the subject, the burden of proof on that point does not rest upon the plaintiff. (*Oldfield v. New York & Har. R. R. Co.,* 3 E. D. Smith, 103, affirmed, 14 N. Y. 310; *Johnson v. Hudson River R. R. Co.,* 20 N. Y. 65, 75 Am. Dec. 375; *Button v. Hudson River R. R. Co.,* 18 N. Y. 248; *Wilds v. Hudson River R. R. Co.,* 24 N. Y. 430.) In the case first cited, Denio, J., says: 'I am of opinion that it

is not a rule of law of universal application that the plaintiff must prove affirmatively that his own conduct, on the occasion of the injury, was cautious and prudent. The *onus probandi,* in this as in most other cases, depends upon the position of the affair as it stands upon the undisputed facts. Thus if a carriage be driven furiously through a crowded thoroughfare, and a person is run over, he would not be obliged to prove that he was cautious and attentive, and he might recover, though there were no witnesses of his actual conduct. The natural instinct of self-preservation would stand in the place of positive evidence, and the dangerous tendency of defendant's conduct would create so strong a probability that the injury happened through his fault that no other evidence would be required. . . . . The culpability of the defendant must be affirmatively proved before the case can go to the jury, but the absence of any fault on the part of the plaintiff may be inferred from circumstances; and the disposition of men to take care of themselves and keep out of difficulty may properly be taken into consideration.' "

In volume 7 of Rose's Notes on United States Reports, at page 910, will be found a list of the numerous cases, both state and federal, that have cited *Railway v. Gladmon* with approval, following the doctrine that the "burden of proving contributory negligence rests on the defendant." Even if the rule were as contended for by respondent, which we think is not the case, there is another and somewhat kindred rule quite generally recognized, the application of which is decisive of the contention urged in this particular case. Here the employee was killed and there were no eye-witnesses to the occurrence, and there was no one to testify to anything other than physical facts and appearances and surrounding and concurring circumstances.

If it were conceded that the burden of proving freedom from contributory negligence rests upon the plaintiff, still in a case where the injury resulted in the death of the employee, and his legal representatives are prosecuting an action for damages, when they have established the fact of his death

and that it resulted from the negligence of the defendant, they may then rest upon a legal presumption which at once arises in favor of life and the instincts of self-preservation. In other words, the law should and will presume that a sane man will exercise reasonable care and precaution in the preservation of his life, and that he will not knowingly expose or subject himself to those injuries and risks that he might reasonably expect would inflict mortal injuries.

In 16 Cyclopedia, 1057, the author in discussing "presumptions," under the subject of *Evidence,* says: "The instinct of self-preservation, and the disposition of men to avoid personal harm, re-enforce an inference that a person killed or injured was in the exercise of ordinary care." The author cites in support of this text *Denver Tramway Co. v. Reid,* 4 Colo. App. 53, 35 Pac. 269; *Atchison etc. Ry. Co. v. Hill,* 57 Kan. 139, 45 Pac. 581; *Connerton v. Delaware etc. Canal Co.,* 169 Pa. St. 339, 32 Atl. 416; *Texas etc. R. Co. v. Gentry,* 163 U. S. 353, 41 L. ed. 186, 16 Sup. Ct. Rep. 1104.

In *Denver Tramway Co. v. Reid,* the supreme court of Colorado approved the following instruction to the jury: "In arriving at a conclusion as to whether the plaintiff was guilty of contributory negligence at the time of the happening of the accident, you may take into consideration the natural instinct of self-preservation; that any person, under ordinary conditions, will take care of himself from regard for his own life."

In *Connerton v. Canal Company,* the supreme court of Pennsylvania said: "In case where the injury complained of results in the death of the injured person, the law presumes that such person exercised the measure of care that it was his duty to exercise. The presumption is *prima facie* only, and may be rebutted by proof of the acts of the injured person or of the circumstances surrounding the accident."

In *Texas Pac. R. Co. v. Gentry,* the plaintiff wholly failed to prove that the deceased was free from negligence in attempting to cross a railway track in front of a moving train,

and it was contended by the company that the plaintiff had failed to make out his case by reason of having failed to show the deceased's freedom from contributory negligence. Justice Harlan in speaking for the supreme court of the United States, said: "As already stated, no one personally witnessed the crossing of the track by the deceased nor the running of the flat car over him. Whether he did or did not stop and look and listen for approaching trains the jury could not tell from the evidence. The presumption is that he did; and if the court had given the special instruction asked, it would have been necessary to accompany it with the statement that there was no evidence upon the point, and that the law presumed that the deceased did look and listen for coming trains before crossing the track." To the same effect, see *Greenleaf v. Illinois Central Ry. Co.*, 29 Iowa, 14, 4 Am. Rep. 193; *Allen v. Willard*, 57 Pa. St. 380; 1 Labatt on Master and Servant, sec. 330.

Counsel for respondent place great reliance on *Patton v. Texas & Pac. Ry. Co.*, 179 U. S. 661, 45 L. ed. 361, 21 Sup. Ct. Rep. 275, and call our special attention to the following quotations from that case: "The fact of accident carries with it no presumption of negligence on the part of the employer; and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence. In the latter case, it is not sufficient for the employee to show that the employer may have been guilty; the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for one of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony; and no mere sympathy for

the unfortunate victim of an accident justifies any departure from settled rules of proof upon the plaintiffs.''

The foregoing extract is in no respect in conflict with the general line of authorities as hereinbefore cited and many others in harmony therewith. It must be readily admitted that where the evidence in a case of this kind is so uncertain as to leave it equally clear and probable that the injury resulted from any one of ''half a dozen causes,'' then a verdict for plaintiff would be pure speculation, and could not be sustained, but it may be true that the evidence would leave it *possible* that the injury resulted from any one of several causes, and yet it would at once point to the *greater probability* that it resulted from the one certain, specific cause charged by the plaintiff. In the latter case, the jury would be justified in returning a verdict in favor of the plaintiff, although it be possible that the injury may have resulted from some other cause. There are very few things in human affairs, and especially in litigation involving damages, that can be established to such an absolute certainty as to exclude the *possibility,* or even some *probability,* that another cause or reason may have been the true cause or reason for the damage rather than the one alleged by the plaintiff. But such *possibility,* or even *probability,* is not to be allowed to defeat the right of recovery where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause. As said by the court in *Texas & Pac. Ry. Co. v. Gentry, supra:* ''When a given state of facts is such that reasonable men may reasonably differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.''

In the syllabus to *Sioux City & Pac. R. R. Co. v. Stout,* 17 Wall. (84 U. S.) 657, 21 L. ed. 745, it is said: ''If upon

any construction which the jury is authorized to put upon the evidence, or by any inference they are authorized to draw from it, the conclusion of negligence can be justified, the defendant is not entitled to a nonsuit, but the question of negligence must be left to the jury.''

The general outline as to the history and facts of this case is given in the original opinion. From that it will be seen that the employee, Adams, was tending an ore conveyor in the mill of the Bunker Hill & Sullivan Mining Company, and that it was his duty to watch the belt and keep rosin on it so as to prevent its slipping on the pulleys. This belt was running on an incline of about forty-five degrees, and conveyed the ore from the lower part of the mill to the upper floor from which it was dumped into an ore chute. Adams was not accustomed to working about the concentrator or in the mill, and was neither experienced nor familiar with that kind of work, and the company's officers appear to have been aware of his inexperience in this class of work. He had worked in the mill only a short time prior to the accident. It is admitted that he was killed in defendant's mill and while engaged in its service. No one was present at the time of the accident, and it was therefore impossible for the plaintiff to produce any witnesses who could narrate the facts of the occurrence. The case depended entirely upon circumstances and the physical facts and conditions as they existed at the time he was last seen, and at the time his body was discovered in the machinery.

While, perhaps, no single fact or circumstance standing alone that has been shown by the plaintiff would justify the jury in saying that it alone established negligence on the part of the defendant, still when all the facts and circumstances that were shown are taken and considered together, they are sufficient to go to the jury. They made a *prima facie* case at least. The court may properly, and, in fact, should say when no facts have been established to support the plaintiff's case, but the court cannot say what facts and circumstances shall be believed and what may not be believed, nor

can the court determine as to what conclusions a jury might reach from a certain state of facts and train of circumstances from which different conclusions might be reasonably reached by different minds.

In this case it does not appear that the nature of the service and employment required the servant to repair the belt or machinery with which he was working, nor does it appear that he was in an equally favorable position with the defendant for inspecting the machinery and instrumentalities with which he was working. The defendant had charge, control and management of its own mill and machinery, and had its day foreman and night foreman in charge. Adams' employment was on the night shift, and it was after dark when he went on duty. The place where his principal and most dangerous work was required was poorly lighted, there being only one electric lamp near him, and that hung over the belt, and the belting and ore carried thereon cast a shadow beneath and at the place where Adams was required to work and apply the rosin. From the evidence in the record, it appears that it would have been very difficult for him to have detected loose bolts or a damaged or defective condition in the belting. It also appears that the bolts were allowed to extend on the under side of the belting as much as three-fourths of an inch, and that immediately after the discovery of the dead body pieces of his sweater and clothing were found on the bolts and nuts, and that many of the nuts were loose and some of the bolts were bent. It also appears from the testimony of at least one witness that it was the custom of those in charge of the mill to have this machinery inspected and the nuts tightened between shifts either at noon or evening. It is shown that Adams helped tighten the nuts at least once previous to the accident, but it does not appear that this was in the line of his duty or a service for which he was employed.

It has been argued by respondent's counsel that Adams' death may have been the result of any one of a number of causes; that he may have been thrown in there by an enemy; that he may have committed suicide; that he may have been

intoxicated and fallen in; that he may have been experimenting as to some different method of applying the rosin; and a great many other theories appear to have been advanced as an explanation of his death. While any of these theories are among the possibilities, nevertheless the complaint of the plaintiff and the answer of the defendant reduce the issue as to the cause of his death to one proposition, and that is set out in paragraph 7 of the defendant's answer. We quote therefrom as follows: "Defendant alleges that said Adams was killed through his own negligence in this: that he carelessly and negligently allowed himself to become entangled in the pulley while carelessly and negligently putting rosin on the said belt and pulley."

The plaintiff produced sufficient evidence to put the defendant on its defense and to entitle the case to go to the jury, and it was error for the trial court to grant a nonsuit. The judgment must be reversed, and it is so ordered and a new trial is granted. Costs awarded in favor of the appellants.

Sullivan, J., concurs.

Stewart, J., took no part in the decision.